## CLIFTON, APPLEGATE & TOOLE, Appellant, v. BIG LAKE DRAIN DISTRICT No. 1, Respondent.

(No. 6,218.)

(Submitted April 9, 1928. Decided May 4, 1928.)

[267 Pac. 207.]

*Drain Districts—Breach of Construction Contract—Estimates of Engineer Conclusive, When—Election of Remedies—Extent of Recovery—Interest—Appeal from Judgment—Review of Evidence.*

Appeal from Judgment—Absence of Motion for New Trial—Extent of Review of Evidence Embodied in Bill of Exceptions.
   1.   On appeal from the judgment in an action in which no motion for a new trial nor one for a directed verdict was made by appellant, the record, prepared under section 9745, Revised Codes 1921, embodying a bill of exceptions, will be examined as to the sufficiency of the evidence, solely for the purpose of ascertaining whether the judgment is supported by any substantial evidence.

Same.
   2.   On appeal from the judgment alone the supreme court may not make an examination into conflicting evidence or the weight of the evidence; but where the attack on the judgment is based on the ground that there is a total failure of supporting evidence, a question of law is presented requiring an examination of the testimony and reversal of the judgment if the evidence is found in that condition.

Drain Districts — Construction Contract — Estimates of Engineer Conclusive, When.
   3.   Where under the terms of a unit-price contract for the construction of a drain for a public drain district, the engineer of the district was empowered to decide questions of measurements of work done or material furnished and his decision was final, and the contractor was to be paid at stated intervals on estimates made by the engineer, such estimates were conclusive and binding on the parties, in the absence of fraud, bad faith or mistake, an honest mistake in measurement, however, not being ground for impeachment of an estimate.

---

   1.   See 2 Cal. Jur. 820.
   2.   See 2 Cal. Jur. 922; 2 R. C. L. 187, 194.
   3.   Conclusiveness of architect's or engineer's decision under working contract, see notes in 56 Am. St. Rep. 312; 10 Ann. Cas. 575; Ann. Cas. 1913A, 180. See, also, 6 Cal. Jur. 420; 6 R. C. L. 962. Conclusiveness as between municipality and contractor of decision of engineer or other empowered officer as to matters concerning contract for public improvement, see note in 23 L. R. A. (n. s.) 317.

Same—Breach of Contract—Election of Remedies—Action for Breach—
Extent of Recovery—Interest.

4. A contractor may, on breach of the contract by the other
party to it by refusal to make a payment becoming due to him
during the progress of the work as provided therein, discontinue
work and elect either to sue upon the contract to recover damages for
its breach, or ignore the contract and bring action on *quantum
meruit;* and where he pursues the former remedy he is entitled
to recover the entire amount due at the time defendant made de-
fault, including percentages reserved on previous estimates, with
interest, from the date on which the contract was breached.

---

[1] Appeal and Error, 3 **C. J.**, sec. 907, p. 987, n. 38.
[2] Appeal and Error, 4 **C. J.**, sec. 2539, p. 648, n. 18.
[3] Building and Construction Contracts, 9 **C. J.**, sec. 115, p. 772,
n. 27.
[4] Contracts, 13 **C. J.**, sec. 723, p. 650, n. 44; sec. 787, p. 694, n. 12.
Interest, 33 **C. J.**, sec. 123, p. 233, n. 26.

*Appeal from District Court, Stillwater County in the Sixth
Judicial District; Stanley E. Felt, a Judge of the Sixteenth
District, presiding.*

ACTION by Clifton, Applegate & Toole against the Big Lake
Drain District No. 1, Stillwater County. Judgment for de-
fendant and plaintiff appeals. Reversed and remanded, with
directions.

*Messrs. Wood & Cooke* and *Mr. Howard Toole,* for Appellant,
submitted an original and a reply brief; *Mr. Sterling M. Wood*
argued the cause orally.

Conclusiveness of engineer's estimate: See *Mundy* v. *Louis-
ville & N. R. Co.,* 67 Fed. 633; *Elliott* v. *Missouri, K. & T. Ry.
Co.,* 74 Fed. 707; *Choctaw & M. R. Co.* v. *Newton,* 140 Fed.
225, 71 C. C. A. 655; *Jones Co.* v. *Fath Co.,* 101 Ohio, 47, 126
N. E. 878; *Williams* v. *Chicago, S. F. & C. R. Co.,* 153 Mo.
487, 543, 54 S. W. 689; *Ames Canning Co.* v. *Dexter Seed Co.,*
195 Iowa, 1285, 190 N. W. 167, 173; *Davis* v. *Gibson,* 70 Ill.
App. 273; *Road Improvement Dist. No. 5* v. *Roach,* 18 Fed.
(2d) 755; *Mosness* v. *German-American Ins. Co.,* 50 Minn.

---

4. Right to interest on damages for breach of contract, see note in
28 **L. R. A.** (n. s.) 24, 40, 82. See, also, 8 Cal. Jur. 797; 6 **R. C. L.**
977, 978.

341, 52 N. W. 932; *Vanderwerker* v. *Vermont Central R. Co.,* 27 Vt. 130; *Condon* v. *Southside R. R. Co.,* 14 Gratt. (Va.) 302; *Curd* v. *Wallace,* 7 Dana (Ky.), 190, 32 Am. Dec. 85; *Brush* v. *Fisher,* 70 Mich. 469, 14 Am. St. Rep. 510, 38 N. W. 446; *Underhill* v. *Van Courtland,* 2 Johns. Ch. (N. Y.) 339; *Hostetter* v. *City of Pittsburg,* 107 Pa. 419; *Levin* v. *Northwestern Nat. Ins. Co.,* 85 Fed. 981; *Baltimore & O. Ry. Co.* v. *Canton Co.,* 70 Md. 405, 17 Atl. 394; 2 R. C. L. 391, 392; Wait on Engineering & Architectural Jurisprudence, 372.

It was optional with the plaintiff to sue upon the contract or waive it and sue for the reasonable value of his work. (See 3 Williston on Contracts, 2615; 6 Page on Law of Contracts, 2d ed., 5707, 5725, 5726; 9 C. J., sec. 61; Wait on Engineering & Architectural Jurisprudence, 617, 628, 629; Donnelly on Law of Public Contracts, par. 302; *Dyer* v. *Middle Kittitas Irr. Dist.,* 25 Wash. 80, 64 Pac. 1009; *Bailey* v. *Fredonia Gas Co.,* 82 Kan. 746, 109 Pac. 411; *Arnott* v. *Spokane,* 6 Wash. 442, 33 Pac. 1063; *Guerini Stone Co.* v. *Carlin Construction Co.,* 248 U. S. 334, 63 L. Ed. 275, 39 Sup. Ct. Rep. 102; *Knotts* v. *Clark Construction Co.,* 249 Fed. 181; *Richmond Dredging Co.* v. *Atchison, T. & S. F. Ry. Co.,* 31 Cal. App. 399, 160 Pac. 862; *Earnshaw* v. *Whittemore,* 194 Mass. 187, 80 N. E. 520; *Phillips & Colby Construction Co.* v. *Seymour,* 91 U. S. 646, 23 L. Ed. 341; *McElwee* v. *Bridgeport Land & Improvement Co.,* 54 Fed. 627, 4 C. C. A. 525; *Clark* v. *New York City,* 4 N. Y. 338, 53 Am. Dec. 379, 381; *Gabrielson* v. *Hague Box & Lumber Co.,* 55 Wash. 342, 133 Am. St. Rep. 1032, 104 Pac. 635.)

*Messrs. Johnston, Coleman & Johnston,* for Respondent, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

Counsel for appellant devotes the major portion of their brief to the proposition that where, according to the terms of the contract, the decision of an architect, engineer or arbitrator is made final and conclusive upon the parties, such decision can only be impeached for fraud, gross mistake or other invalidating circumstance of like character. We do not dispute the correctness of this proposition as a general rule. However,

in order to bring this rule into operation, it is obvious that the contract must, either by express terms or by necessary implication, provide that such decision is in fact final and conclusive. It is our contention that in this case a reference to the contract involved clearly shows that the progress estimates of the engineer such as the one upon which this action is based were not to be deemed final or conclusive upon the rights of the parties in any sense of the word.

These progress estimates were not to be considered final or conclusive in any sense of the word. According to the express provision of the stipulation the engineer shall monthly furnish estimates covering the amount and value of the work done during the preceding month which should only be an approximation, and not made with exactness or according to strict measurement.

"Where the contract calls for periodical or running estimates as the work progresses and payments based thereon, and for a final estimate after the work is completed, such periodical or running estimates are not, as a rule, conclusive on either party," (9 C. J. 827; *Towles & Co.* v. *County Court of Summers County*, 95 W. Va. 310, 121 S. E. 93; *Smith* v. *Faris-Kesl Const. Co.*, 27 Idaho, 407, 150 Pac. 25; *Warner Const. Co.* v. *Louis Hansen's Sons*, 20 Fed. (2d) 483; *Maney* v. *Idaho Construction Co.*, 30 Idaho, 111, 163 Pac. 297; *Gonder* v. *Berlin Branch R. Co.*, 171 Pa. 492, 33 Atl. 61).

If, as contended by us herein, the monthly progress estimates provided for by the contract are not final and conclusive upon both of the parties, so that their accuracy could be questioned, it follows as a matter of course that the only question before the lower court was as to whether the work covered by the estimate of June 21, upon which appellant relies, had actually been performed. (*Smith* v. *Faris-Kesl Const. Co., supra; Maney* v. *Idaho Construction Co., supra.*) There was a straight conflict of evidence upon this point and the jury having decided that question in favor of respondent, the appellant is not entitled to the relief it seeks by this appeal.

316 Clifton-Applegate-Toole v. Drain Dist. No. 1. [Mar. T. '28

[82 Mont. 312.]

We will also admit that proof of simple error or mistake in computation or classification is ordinarily held insufficient to invalidate the findings of an engineer or architect, but it is universally held that gross errors in such estimates imply and are strong evidence of fraud and bad faith upon the part of the engineer or architect. (*Perry* v. *Greenwich Ins. Co.*, 137 N. C. 402, 49 S. E. 889; *Dawson* v. *Northwestern Const. Co.*, 137 Minn. 352, 163 N. W. 772; *Sweeney* v. *Jackson County*, 93 Or. 96, 178 Pac. 365, 182 Pac. 380; *Hurley* v. *Kiona-Benton School Dist. No. 27*, 124 Wash. 537, 215 Pac. 21; *Huested* v. *Patrons' Mut. Fire Ins. Co.*, 223 Mich. 213, 193 N. W. 815; *West Homestead Borough* v. *Erbeck*, 239 Pa. 192, 86 Atl. 773; *Ritchie* v. *City of Topeka*, 91 Kan. 615, 138 Pac. 618; *Vaughan Const. Co.* v. *Virginian Ry. Co.*, 82 W. Va. 658, 97 S. E. 278; *Lasater* v. *Lopez* (Tex. Civ. App.), 202 S. W. 1039; *Atchison, T. & S. F. Ry. Co.* v. *West*, 176 Cal. 148, 167 Pac. 868.)

It is equally true that arbitrary and capricious acts of an engineer in making or refusing to make estimates of work done under contract such as that involved in this action are treated as the equivalent of fraud. (*Lund* v. *McClinton* (Mo. App.), 205 S. W. 241; *Berry* v. *Huntington Masonic Temple Assn.*, 80 W. Va. 342, 93 S. E. 355; *State ex rel. Peterson* v. *City of Seattle*, 93 Wash. 593, 161 Pac. 478; *Rizzolo* v. *Poysher*, 89 N. J. L. 618, 99 Atl. 390; *Fay* v. *Moore*, 261 Pa. 437, 104 Atl. 687.)

Further, the engineer, by the acceptance of such a trust as that conferred upon him by contract similar to the one involved herein is bound to exercise at least a reasonable degree of diligence, and inattention or indifference to the interests of either of the parties to the contract is at least an implication of bad faith. (*United States Fidelity & Guaranty Co.* v. *Board of Commrs.*, 137 Ark. 375, 209 S. W. 88; *Clover Mfg. Co.* v. *Austin Co.*, 101 Conn. 208, 125 Atl. 646.)

Appellant's only remedy in this matter was by an action in *quantum meruit*. Having based its action upon contract, it is entitled to no relief. (*Riddell* v. *Peck-Williamson Heating*

*& Ventilating Co.,* 27 Mont. 44, 69 Pac. 241; *Cook & Woldson* v. *Gallatin R. R. Co.,* 28 Mont. 509, 73 Pac. 131; *Cox* v. *Mc-Laughlin,* 54 Cal. 605; 2 Cal. Unrep. 858, 18 Pac. 111; *Gray* v. *Bekins,* 186 Cal. 389, 199 Pac. 767; *San Francisco Bridge Co.* v. *Dumbarton Land & Improvement Co.,* 119 Cal. 272, 51 Pac. 335; *Carlson* v. *Sheehan,* 157 Cal. 692, 109 Pac. 29; *Fairchild-Gilmore-Wilson Co.* v. *Southern Refining Co.,* 158 Cal. 264, 110 Pac. 951; *Laiblin* v. *San Joaquin Agricultural Corp.,* 60 Cal. App. 516, 213 Pac. 529; *Cochran* v. *Hamblen* (Tex. Civ. App.), 215 S. W. 374, 383; *Wharton & Co.* v. *Winch,* 140 N. Y. 287, 35 N. E. 589, 591.)

MR. JUSTICE GALEN delivered the opinion of the court.

The plaintiff, Clifton, Applegate & Toole, a corporation, hereinafter referred to as "the contractor," brought this action against the Big Lake Drain District No. 1 of Stillwater County, a body corporate, hereinafter designated as "the district," for damages because of the alleged breach of a contract executed September 3, 1919, for the construction of a certain tile drain in accordance with plans and specifications. The complaint is quite lengthy. Therein it is alleged, among other things, that by the terms of the contract the contractor was to be paid for labor and materials at stated intervals as the work progressed, on estimates to be made by the engineer in charge of construction; that on June 21, 1921, prior to the institution of this action, the engineer made an estimate in writing pursuant to the contract which covered work done and material delivered by the plaintiff to the amount of $11,717.19, which the district has failed and refused to pay, save and except as to the sum of $1,378.22, leaving a balance due and unpaid amounting to $10,338.97. In addition thereto, because of the alleged breach of the contract, the contractor seeks to recover the percentages reserved on that and previous estimates, aggregating $9,766.94. Other items of damages claimed by the contractor appear to have been waived, so that the contractor's right to recover from the district the full amount of the last estimate made by

the engineer plus the percentages reserved, averred to total the sum of $20,105.91, together with interest, is the only issue necessary to be considered on this appeal.

By its answer, the defendant denies the damages claimed by the plaintiff, and alleges in defense that the plaintiff and the engineer "fraudulently conspired and colluded to defraud the defendant in further estimates of work performed and materials furnished by the plaintiff" under the contract, "by falsely pretending, claiming, and estimating that the width of the trench then constructed and paid for * * * was four feet, when in truth and in fact it was but three feet in width," as shown by previous estimates of the engineer and statements of the plaintiff; and, further, the defendant pleads an estoppel against the plaintiff by reason of its having theretofore received estimates and made its settlements with the district on the basis of a trench three feet in width. A counterclaim is pleaded and damages asked not requiring consideration. Plaintiff's reply denies all allegations of new matter in the defendant's answer. The cause was brought on for trial before the court sitting with a jury, and, at the conclusion of all of the evidence introduced by the parties, upon submission of the case, the jury regularly returned a general verdict in favor of the defendant. Judgment was duly entered on the verdict, and therefrom this appeal was perfected.

The only question presented by the plaintiff's several [1, 2] assignments of error necessary for consideration in disposition of the case is whether there is any substantial evidence to support the verdict and judgment.

At the outset, we are confronted with objection by the defendant to a consideration of the sufficiency of the evidence contained in the record presented, as it appears therefrom that the plaintiff permitted the case to go to the jury without objection, under instructions as to the law, presumed to be correct, since they are not incorporated in the record. It appears that the plaintiff made no motion for a directed verdict nor for a new trial. Thus question as to the sufficiency of the evidence was

not presented to the trial court, the plaintiff having in no manner demurred to the evidence. A bill of exceptions was settled embodying the testimony and proceedings at the trial, and, as by the statute authorized, is incorporated in the record.

Since the enactment of section 9745, Revised Codes 1921, in civil cases, an appeal may be prosecuted to this court only from the judgment; however, motions for a new trial in the district courts have not been dispensed with (Id., secs. 9395 to 9401), and serve the same purpose as before the passage of the new statute governing appeals.

Our amended statute provides: "Except as above provided, the party appealing from a final judgment if he desires to present on appeal the proceedings had at the trial, must, within fifteen days after the entry of judgment if the action was tried with a jury, or after receiving notice of the entry of judgment if the action was tried without a jury, or within such further time as the court or judge thereof may allow,   *   *   *   prepare and file with the clerk of the court and serve upon the adverse party a bill of exceptions, containing all of the proceedings had at the trial upon which he relies, in which bill the evidence shall, unless otherwise prescribed by a rule of the Supreme Court, be stated in narrative form, except that the particular portion of the record showing objections to the admission or rejection of testimony upon which the party preparing the bill expects to rely, shall be set out verbatim.   *   *   *   When settled, the bill must be signed by the judge or referee with his certificate to the effect that the same is allowed, and shall then be filed with the clerk." (Sec. 9390, Rev. Codes 1921.)   And, further, that on appeals from an order other than one granting a new trial "the appellant must furnish the court with a copy of the notice of appeal, of the judgment or order appealed from, and of all papers and evidence used on the hearing in the court below. Such papers, files, and evidence, when certified by the clerk of the court to be correct and accompanied by a certificate of the judge that such records have

been used at the hearing in the district court, may be considered on appeal without further identification. Appeals from orders overruling the motion for a new trial are hereby abolished, and all questions heretofore raised on such an appeal may be raised on an appeal from the judgment." (Sec. 9745, Id.)

The record on appeal in this case was prepared pursuant to and in compliance with this last-mentioned statute. It is further provided that "the record on appeal from a final judgment shall consist of the judgment-roll, as defined in section 9409, together with all bills of exception settled and filed in the case, and a copy of the notice of appeal." (Sec. 9402, Rev. Codes 1921.)

Where, as here, the record contains a bill of exceptions certified as authorized by the statute, but there appears to have been no motion made for a new trial, it will be examined solely to ascertain whether the verdict or judgment is supported by any substantial evidence. (*State* v. *Brantingham,* 66 Mont. 1, 212 Pac. 499; *Watts* v. *Billings Bench Water Users Assn.,* 78 Mont. 199, 253 Pac. 260; *Steven* v. *Potlatch Oil Co.,* 80 Mont. 239, 260 Pac. 119; *Ramsbacher* v. *Hohman,* 80 Mont. 480, 261 Pac. 273.) We may go no further in consideration of the evidence than was permissible under our former practice on an appeal from the judgment alone. This rule is established, and, while it may appear somewhat illogical, yet we must continue to follow it until the legislature sees fit to change it— a simple process in the event it be found unsatisfactory. The correctness of the rule is conceded by counsel for the plaintiff. Applying it to this case, we find that we must consider the evidence, as the plaintiff contends that there is no evidence whatsoever to support the verdict. If there is no evidence to sustain it, it is manifest it should not be permitted to stand. On such a record we may not make examination into conflicting evidence or the weight of evidence, any more than was permissible under the former practice on an appeal from the judgment alone. And the rule is firmly established that, where there is sub-

stantial conflict in the evidence, this court will not interfere with the judgment. But where, as here, the judgment is attacked because of a total failure of supporting evidence, a question of law is presented requiring an examination of the testimony (*Withers* v. *Kemper*, 25 Mont. 432, 65 Pac. 422), and, if no substantial evidence is found to support a verdict, it should be plain that the court was in error in entering the judgment.

By the terms of the contract it is provided that payments are to be made by the district in accordance with a fixed schedule of prices per yard and per foot for different classes of work upon the engineer's estimates pursuant to general specifications attached, such allowances to be in full compensation for material, labor, tools and equipment, and the construction of the work to completion as by the engineer required. Both general and specific specifications are attached, and made a part of the contract, wherein certain pertinent provisions are made, as follows:

"*Engineer:* The word 'engineer,' when found in the specifications, shall mean the engineer employed by the county drain commissioner or the engineer duly authorized by the county drain commissioner to take charge of the work.  *  *  *  In order to enable the said contractor to prosecute the work advantageously, the engineer shall once a month, or about the 1st day of each month, make an estimate in writing of the work done and material delivered to be used in the work and of the value thereof, according to the terms of this contract. The first such estimate shall be of the amount or quantity and value of the work done and materials delivered since the contractor commenced the performance of this contract on his part, any subsequent estimate (except the first one) shall be of the amount or quality and value of the work done since the last preceding estimate was made, and such estimate of the amount and quantity shall not be required to be made by strict measurement, or with exactness, but they [it] may, at the option of the engineer, be approximate only. Upon such estimate being

made, the county drain commissioner shall pay the contractor the following proportion or percentage thereof, to wit, eighty-five (85) per cent. thereof up to and until such time as the *total* estimated value of the work done and materials delivered shall amount to fifty thousand dollars ($50,000.00). Ninety (90) per cent. thereof after the total estimated value of such work and materials delivered shall have amounted to sixty thousand dollars ($60,000.00) until the contractor shall have fully and completely performed the contract on his part. * * * Engineer's measurements and classifications final and conclusive: All work done under this contract shall be done to the satisfaction of the engineer, who shall, in all cases, determine the amount, quality, acceptability, and fitness of the several amounts of work and materials which are to be paid for hereunder, and shall decide all questions which may arise as to the measurements of quantities and the fulfillment of this contract on the part of the contractor, and shall determine all questions respective to the true construction or meaning of the plans and specifications and his determination and decision thereon shall be final and conclusive, subject only to revision by arbitration. * * *

"*Payment:* Work shall be paid for in warrants drawn on the funds of the Big Lake drain district No. 1, Stillwater county, Montana, such warrants bearing interest at six per cent. (6%) shall be received at par value without discount on the estimates of the engineer, reserving ten per cent. (10%) from all estimates except the final estimate. Funds to be spread for the construction of such drain shall be divided into ten equal installments, the first installment to be collected in 1920. * * *

"*Canal Cross-Sections:* The canal cross-sections are as follows: Five (5) foot base; side slope, one (1) foot horizontal to one (1) foot vertical, with a depth varying as shown on profile.

"*Excavation of Land:* The trench shall be excavated along the line designated by the engineer and to the depth necessary for laying the sewer at the grade given by him. The trench

at the bottom shall be six inches wider than the outside diameter of the pipe to be laid in it. * * * The engineer shall have the right to limit the amount of trench that shall be opened or partly opened at any time in advance of the completed drain and also the amount of trench left unfilled.''

It appears without dispute that several estimates of work done and materials furnished during the progress of the work had been made by the engineer, and the contractor was paid by the district in accordance therewith until the refusal of the district to fully settle with the contractor on the engineer's estimate made June 21, 1921, as a result of which the contractor discontinued work and instituted this action. On that date the engineer gave the contractor an estimate for work done and materials furnished, amounting to $12,999.10, which, after deducting ten per cent, held back until completion of the work, left a balance of $11,699.19, of which amount the district paid $1,378.22, leaving an unpaid balance of $10,320.97, to which should be added $20 because of a mistake in addition in the engineer's figures, making the total amount approved for payment by the engineer $10,340.97. This estimate recited: ''All estimates have been made on 3' width—depth of ditch and timbering requires 4.0'.'' The percentages withheld on this and previous estimates appear to aggregate $9,821.24.

There is no evidence in the record to support the allegations of the defendant's answer charging fraud and collusion between the contractor and the engineer; the proof being to the contrary. The estimate in question was made by an engineer of the district's choice, and the contractor had nothing to do with it until after it had been made. And the only proof in the record possibly reflecting on the defense of estoppel is that which is shown by previous estimates made by the engineer, allowed and paid by the district, and accepted by the contractor. The defendant was so far afield in its endeavor to prove estoppel that no consideration need be given the question. In fact, the defendant appears to have abandoned such alleged defense.

The engineer, H. C. Rothwell, testified: "I have read the answer of the defendant in this lawsuit. I realize from the reading of the answer that in this first defense in the answer I am charged with having fraudulently conspired and colluded with the plaintiff to defraud the defendant. That charge is absolutely not true. * * * I was the engineer in charge of the work. I set the stakes along the line, and also acted as my own inspector on the job. I did not require any other man to take any of the responsibility at all; I took it all myself. I made measurements; helped the contractor set his baffleboards across the ditch to get the grade at which the pipe was to be laid. I made measurements that according to the classifications were necessary, and went along and did the inspection, inspecting the pipe and seeing that it was laid properly. I was on the job, along the line of the ditch, at all times during each working day. I actually followed the work of the men, and I knew just exactly what they were doing, and I knew what the trencher was doing. * * * There was a trencher used there; it was an Austin trencher O—42. That is the number that the manufacturer put on it. O is the type and 42 means the width of the trench that it is capable of digging. It was capable of digging a 42-inch trench. I did observe the trencher at work. I certainly did observe the trencher at work between stations 282 plus 50 to 367, but no more so than anywhere else. In other words, I observed that stretch of work just as carefully as I did any other stretch. The width of the trench excavated between those two stations, it was around, well, it run from about 45 inches up until, about, well, I should say about 6 feet at the bottom, in width, but at the top it ran around a width from any place, oh, around 15 feet, I suppose, where it got away from us, and we couldn't hold it. Well it run from around about, from about 45 inches, I suppose, or between 45 and 50 inches, something like that, at the bottom. It varied at the top. * * * The width of the trench he excavated was at least 45 inches at the bottom. And it was at least that same width all the way to the

top. * * * Between those two stations most of the excavation was done by this trencher, and where they did have the slopes and cave-ins it was a lot of hand work; hand work, more or less, all along the job. There was some spudding, as such. Spudding is required, because before we could get the trencher out of the road there was liable to be a cave-in. We had several instances of that, and I required the contractor to spud down alongside of the boom and put his timbers down in order to catch this before it started. That was really in advance of the cutting by the machine. This spudding went clear down to the bottom; I should say they would dig off about 3 inches on each side of the ditch, or something like that. That was in addition to the amount cut by the machine itself. * * * The pipe itself that was laid in the trench was 20-inch pipe. It is an inch and a half shell, make it about 23 inches outside diameter. The diameter at the bell of the pipe, I think it was 27½. * * * That classification was determined by measurement. I did the measurement with a rule. I got down in the ditch. Those figures were made at the time I did the work, and entered in the book at the time, and were made the basis of the estimates that I prepared. At the time I took the estimates, or the measurements, all these figures were made. Between those stations that timbering was ordered by me, because it was necessary to have the trench timbered in order to lay the pipe in a workmanlike manner. That involved the necessity of digging the trench as wide as I have stated * * * from 367 to 282 plus 50 it was necessary to timber, and I so ordered it, and the contractor had to do it. Referring to the estimate made out, the estimate itself, meaning Plaintiff's Exhibit 3 (the one in controversy), these figures correctly represent work and labor done by the contractor; that was my reason for making the estimate. Plaintiff's Exhibit 3 was not the only estimate I made. I made all the estimates that were made. These estimates were not accurate calculations of the amount of yardage, just approximately. That is the case in relation to the estimates prior to Plaintiff's Exhibit

3.  \*  \*  \* Referring to Plaintiff's Exhibit 12, that is the type of bucket and extension cutter used. They cut a trench around 45 inches wide.''

This testimony is not disputed in any way, save as to the width of the trench, and the defendant's evidence in this respect is most unsatisfactory in character. Reference alone to the testimony of one witness, James Wilson, a drain commissioner for the district, will suffice, as his testimony is by far the strongest given in support of the defendant's contention. He testified: ''The width of the trench excavated while I was there on the job was 3 feet. I measured the trench blades or buckets that did the digging. They were 36 inches wide—3 feet.  \*  \*  \* There was no difference whatever in the width of the trench at any time while I was on the job that I could see.  \*  \*  \* The width of the ditch that I saw which was excavated by the men in charge there at that time in April, May, and June was 3 feet.  \*  \*  \* I measured the full width of those buckets, that is from the end of one prong to the other. I did not measure the bucket itself. These prongs extended a little bit, yes, to the side of the bucket, very little. I used a tapeline for measuring.  \*  \*  \* My measurement showed 36 inches. I don't know as I recall how many times I measured those buckets. Measured them quite a few times. All of the buckets on the boom of this machine were just 36 inches wide.  \*  \*  \* I believe there was some of them a little shorter, but the longest ones were 36 inches wide. I had no other way of thinking anything else than the trench was only 36 inches wide, because it is only 3 feet, and I imagine that is all it can dig, only it is just 3 feet wide. When I say the trench was only 3 feet wide, I do not necessarily base it on the size of the buckets with the cutters. I also base it on the fact I measured the ditch.  \*  \*  \* When I applied my tape measure, I found it was 3 feet.  \*  \*  \* If the ditch was any wider than 36 inches, it would be caused by the vibration of this long boom which you referred to a while ago.  \*  \*  \* This wobbling or variation of the boom had a tendency to make

the ditch wider than 36 inches, a very little. When I measured the width of the trench with this tape measure, I measured it down in the ditch. It did not measure the top of the ditch. I measured it possibly half way down in the ditch. * * * In other words, I stood in the trench, and just held the tape measure in front of me from one side to the other. And I found it was 36 inches wide at that point. I don't know how many times I made this measurement. I couldn't say—maybe fifteen or twenty times. I took this measurement along the ditch fifteen or twenty places. * * * I never measured twice in the same place and always got the same result. When I conducted or made these measurements I measured from one dirt bank to another; just between the dirt bank. I measured the buckets on that machine three or four times so that I probably measured three or four buckets. In these various measurements that I took of the ditch I did not observe where I took them. I did not make any written memorandum of them or anything of that sort. When I told you about the measurements I took, I was speaking entirely from recollection of measurements. * * * I have no definite idea as to where those measurements were taken, possibly at intervals of a thousand feet apart. * * * All of these stations where I found the ditch to be 36 inches wide it was timbered to some extent."

In view of the settled law applicable, all of such evidence on the defendant's part is wholly immaterial. It is here set forth simply to better demonstrate the defendant's contention. However, it is noteworthy that Mr. Wilson placed his O. K. on the estimate as made by the engineer, nonpayment of which was the cause of the contractor discontinuing the work and the institution of this action.

The law appears to be definitely settled that "the decision, [3] estimate, or certificate of an architect, engineer, or superintendent, in approving or disapproving the work as a performance of a contract, or in passing on questions relating thereto, is, in the absence of fraud, bad faith, or mistake, conclusive and

binding on the parties, where the contract, either in express terms provides that it shall be final and conclusive, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the arbiter thereof.'' (9 C. J. 772.)

In the case of *Mundy* v. *Louisville & N. R. Co.* (C. C. A.), 67 Fed. 633, the law is well stated by Judge Taft as follows: ''The authorities leave no doubt that construction contracts, in which the contractor stipulates that the engineer or architect of the owner shall finally and conclusively decide, as between him and the owner, what amount of work has been done, and its character, and the amount to be paid therefor under the contract, are legal, and should be enforced. In such cases, after the work has been done, the contractor can recover nothing in excess of the amount found due by the engineer, unless he can make it appear that the engineer's decision was fraudulently made, or was founded on palpable mistake. ([*Chicago, Santa Fé & California*] *Railroad Co.* v. *Price*, 138 U. S. 185, 34 L. Ed. 917, 11 Sup. Ct. Rep. 290; [*Martinsburg & P.*] *Railroad Co.* v. *March*, 114 U. S. 549, 29 L. Ed. 255, 5 Sup. Ct. Rep. 1035; *Sweeney* v. *United States*, 109 U. S. 618, 27 L. Ed. 1053, 3 Sup. Ct. Rep. 344; *Kihlborg* v. *United States*, 97 U. S. 398, 24 L. Ed. 1106; *Fox* v. *Railroad Co.*, 3 Wall. Jr. 243, 9 Fed. Cas. 627 (Case No. 5010); *Lewis* v. *Railroad Co.* [C. C. A.], 49 Fed. 708; *Ranger* v. *Railway Co.*, 5 H. L. Cas. 72; *Waring* v. *Railway Co.*, 7 Hare, 482; *McIntosh* v. *Railway Co.*, 2 De Gex & S. 758; *Hill v. Railway Co.*, 11 Jur. (n. s.) 192; *Scott* v. *Corporation of Liverpool*, 28 Law J. Ch. 230; *Herrick* v. *Railroad Co.*, 27 Vt. 673; 2 Wood, R. R. 1138 et seq., and cases cited.) The fact that the contract at bar expressly stipulates that the decision shall not be conclusive in case of fraud or mistake does not vary its construction. The exception would be implied, if it were not expressed.''

''Where the parties to a construction contract designate a person, such as an architect or engineer, who is authorized to determine questions relating to its execution, and stipulate that

his determination shall be final and conclusive, both parties are absolutely bound by his determination of those matters which he is authorized to determine, except in case of fraud, or such gross mistake on his part as would necessarily imply bad faith or a failure to exercise an honest judgment.   The reason underlying this rule is that under such circumstances the contract makes the architect or engineer the arbitrator, and that his determination can be attacked only in such manner as that of any other arbitrator.   Substantially the same rule would seem to apply to an engineer's estimates, although to the extent that it involves calculations there may perhaps be a basis for a distinction.   It has been declared that a stipulation in a construction contract that it shall be executed under the direction of a certain engineer, by whose measurements and calculations the amount of work performed shall be determined, and whose determination shall be final, is valid and binding, and such determination is conclusive upon the parties, or, as is sometimes said, in the absence of proof of corruption, bad faith, or misconduct on his part, or palpable mistake appearing on the face of the estimate.''   (6 R. C. L., sec. 340, p. 962.)

In discussing such settled principles, Mr. Chief Justice Callaway, speaking for the court in the very recent case of *Lee* v. *Providence Ins. Co., ante,* p. 264, 266 Pac. 640, said: ''It is the policy of the law to favor the settlement of disputes by arbitration and every reasonable intendment will be indulged to give effect to such proceedings.   (5 C. J. 20.)   'The decision by arbitration is the decision of a tribunal of the parties' own choice and election.   It is a popular, cheap, convenient and domestic mode of trial, which the courts have always regarded with liberal indulgence.   They have never exacted from these unlettered tribunals—this *rusticum forum*—the observance of technical rule and formality.   They have only looked to see if the proceedings were honestly and fairly conducted, and, if that appeared to be the case, they have uniformly and universally refused to interfere with the judgment of the arbitrators.'   (Language of Chancellor Kent in

*Underhill* v. *Van Cortland*, 2 Johns. Ch. 339, adopted by this court in *Carlston* v. *St. Paul Fire & Marine Ins. Co.*, 37 Mont. 118, 94 Pac. 756, 127 Am. St. Rep. 715.)"

Here the engineer is expressly clothed with authority to decide *all questions arising "as to measurements,"* and *his decision is made "final and conclusive."* And the law appears to be settled that, where the parties to a contract for the performance of work and the furnishing of material agree that the certificate of the engineer as to the amount and character of the work done or material furnished shall be conclusive, it becomes so as to questions of measurement the same as other matters arising in connection with the carrying out of the specifications although an accurate measurement is possible. (*Elliott* v. *Missouri, K. & T. Ry. Co.* (C. C. A.), 74 Fed. 707.)

An honest mistake in measurement or in judgment is not a ground for impeachment of the engineer's estimates. It is not sufficient to say that the engineer came to a conclusion of fact erroneously. Although the court might have made a different estimate, it may not substitute its judgment for that of the engineer. Applying the law to the facts, and there appearing to be no material conflict in the evidence, the engineer's certificate being conclusive in the absence of fraud, it is plain that the evidence will not support the verdict and judgment. The defendant, by failure to pay the amount of the engineer's estimate, breached the contract, and the plaintiff is entitled to recover damages.

But the defendant contends that the plaintiff's right of [4] action, if any existing, is upon the *quantum meruit* and not upon the contract. The defendant's position, as stated by its counsel in their brief, is "that under the facts of this case the only remedy now open to appellant is an action for *quantum meruit*. Assuming the breach as alleged by appellant, upon the failure of the respondent to make the required installment payment, two courses were open to appellant: First, it could continue to perform the contract and bring an action to recover the price of the work already done; or, second, it

could rescind the contract and bring an action upon the implied promise of the respondent to pay the reasonable worth of the labor done and the materials furnished. In neither event would appellant be entitled to the damages claimed in this action; but, as indicated above, it appears that appellant in effect abandoned or rescinded the contract, in which case its only action would lie in *quantum meruit.*"

The author of the treatise on Contracts in 6 Ruling Case Law, pages 977, 978, says: "The rule has been stated in the following comprehensive language: In the case of a contract for a certain amount of labor, or for work for a specified period, when the labor is to be performed on the materials or property or in carrying on the business of the defendant, or when the defendant has otherwise accepted or appropriated the labor performed, if the defendant prevents the plaintiff from performing the whole, or wrongfully discharges him from his employment, or orders him to stop the work, *or refuses to pay as he has agreed* (when payments become due in the progress of the work), or disables himself from performing, or unqualifiedly refuses to perform his part of the contract, *the plaintiff may, without further performance, elect to sue upon the contract and recover damages for the breach, or treat the contract as at an end and sue in general assumpsit* for the work and labor actually performed.

Professor Paige, in his treatise on the Law of Contracts, correctly and succinctly states the rule applicable as follows: "The right to enforce the contract by an action for damages or for specific performance, and the right to ignore the contract and to recover the reasonable value of the performance, are alternative, inconsistent, remedial rights which the law gives upon breach. The party who is not in default may elect between them. The party who is in default has no such election, even in jurisdictions in which he is allowed such quasi-contractual right." (Vol. 6, 2d ed., p. 5707.) And, again, where the breach of the contract "is one which will operate as a discharge of the contract, a party who is not in default

.may waive a right of action for damages and exercise his right of election to recover the value of his performance which he has furnished under the contract." (Paige on Contracts, 2d ed., pp. 5725, 5726.)

Notwithstanding, it is the contention of the defendant's learned counsel that the question is settled by Montana decisions which hold that the contractor's only remedy is to complete the work and then sue upon the contract, or upon breach during the progress of the work to rescind and sue for damages upon a *quantum meruit.* The cases of *Riddell* v. *Peck-Williamson Heating & Ventilating Co.,* 27 Mont. 44, 69 Pac. 241, *Cook & Woldson* v. *Gallatin R. R. Co.,* 28 Mont. 509, 73 Pac. 131, and *McFarland* v. *Welch,* 48 Mont. 196, 136 Pac. 394, are cited and relied upon. These cases are not in point in support of the defendant's position. In the *Riddell Case,* the contract was to furnish all labor and materials required to complete the contract in accordance with specifications and a certain schedule of prices; no time being fixed for payment. It was an entire contract, and the court under such circumstances very properly said, respecting the contractor's right of recovery in advance of performance: "Upon its face the contract is entire, and the consideration single. The intention of the parties, as disclosed and evidenced by the terms of their engagement reduced to writing, was that the defendant should not become indebted to Suiter unless and until he furnished all the material and did all the labor specified in the contract. There was in the contract no time expressly appointed for payment, but the law made the price due and payable upon complete performance by Suiter or his firm. Substantial performance by Suiter of his promises was a condition precedent to the company's liability under the express contract to pay the whole or any part of the consideration. *(Franklin* v. *Schultz,* 23 Mont. 165, 57 Pac. 1037.) The fixing of prices upon the different items did not operate as a severance *(Isaacs* v. *McAndrew,* 1 Mont. 437); it was a mere means of ascertain-

ing the total compensation to be paid in the event Suiter executed the undertaking.''

The *Cook & Woldson Case* was an action brought on the *quantum meruit* by the contractor, after partial performance, in the delivery of certain railroad ties pursuant to contract, upon failure of the railroad to make monthly payment on ties delivered. This court said: ''It does not seem to be necessary to quote or cite authorities to support the statement that plaintiffs, if they performed as above suggested, did not have to wait until the end of the term, but could sue on default of monthly payment and bring their action on a *quantum meruit.* (See note to *Cutter* v. *Powell,* 2 Smith's Leading Cases, at page 55; *Broumel* v. *Rayner,* 68 Md. 47, 11 Atl. 833; *Perkins* v. *Hart,* 11 Wheat. (U. S.) 237, 6 L. Ed. 463.) The opinion in *Riddell* v. *Peck-Williamson Heating & Ventilating Co.,* 27 Mont. 44, 69 Pac. 241, cited by appellant, does not contain anything opposed to the views expressed above, but, on the contrary, there is a statement therein that 'if payments were to be made, * * * then a cause of action accrued as soon as the defendant failed to make a payment when it should have been made. Default in making such payment would have entitled the plaintiffs, if they continued to perform under the contract, to recover judgment for the price of the work already done; or such default would have warranted them in treating the special contract as at an end, and authorized them to maintain an action on the implied promise of the defendant to pay the reasonable worth of the labor done and materials furnished. They could, at their option, have pursued either course.' So, in the case before us, the plaintiffs, if the defendant failed to pay, could have kept on working under the contract, and sued thereunder for the fixed value of their services, with a second count for the value of extra services; or they could adopt the course which they did, treating the special contract as at an end, and suing on a *quantum meruit.*'' In that case, recognition is given the rule that upon breach of the contract the contractor may without further performance elect either

to sue on the contract or upon a *quantum meruit*. It does not hold that the contractor may recover only upon a *quantum meruit*.

In the *McFarland Case* it is expressly held that upon breach of a contract suit may be brought on a *quantum meruit* for work already performed, or upon the contract for the amount due thereunder. Therein 9 Cyc., page 688, is cited in support of the rule stated, wherefrom it appears: "According to the great weight of authority if a special agreement has been performed in part by the plaintiff and its further performance has been prevented by the act of the defendant, the plaintiff may at his option either sue for the breach and recover damages or abandon the contract altogether and recover upon a general *indebitatus assumpsit*." The syllabus of the holding in that case is as follows: "Where full performance of a contract is prevented by the wrongful interference of one party, the other may treat such wrongful act as a breach of the contract and at once sue for damages arising from loss of the benefits which would reasonably have followed a complete performance on his part, showing that he was injured by the breach, and the extent of his injury; or treat the contract as at an end and sue upon a *quantum meruit* for the part already performed."

The contract involved in the case before us is what is termed a "unit-price contract," as distinguished from one requiring complete performance for a stipulated amount. The district agreed to pay for the work upon engineer's estimates as it progressed, and failure so to do constituted a breach which warranted its abandonment and suit thereon for the amount due. Here the contractor makes no claim for profits to accrue upon a complete performance, but rather for the amount stipulated to be paid for part performance. The action is to recover the amount due at the time the contract was breached, comprising the unpaid estimate and the percentages reserved on previous estimates. Defendant's breach gave the contractor such right of recovery. By our statute it is expressly

provided that "partial performance of an indivisible obligation extinguishes a corresponding portion thereof, if the benefit of such performance is voluntarily retained by the creditor, but not otherwise." (Sec. 7428, Rev. Codes 1921.)

It appears that demand for payment was made on the basis of the engineer's estimates of date June 21, 1921, and that on June 23, 1921, the estimate was disallowed, to the extent of $11,487.75. So that, if the contractor was legally entitled to payment of the balance due as shown by the estimate, and upon refusal to pay the same was justified in discontinuing the work and requiring the defendant to pay the entire amount then due on the contract, he is entitled to interest at the legal rate from that date on the full amount capable of being made certain by calculation. (Sec. 8662, Rev. Codes 1921; *Hefferlin v. Karlman*, 29 Mont. 139, 74 Pac. 201.)

The amount owing to the contractor on the engineer's estimate involved, plus percentages reserved, totals $20,162.21; however, the plaintiff is not entitled to recover a greater amount than by its complaint it alleged to be due.

All of the facts were fairly placed before the court and are now before us, and, since the law applicable is plain and easy of application, the judgment is reversed, and the cause remanded to the district court of Stillwater county, with directions to enter judgment in plaintiff's favor for the sum of $20,105.91, together with interest at the legal rate from June 23, 1921 (the date the engineer's estimate was rejected), and costs incurred in the action

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES MYERS and MATTHEWS, and HONORABLE A. J. HORSKY, District Judge, sitting in place of MR. JUSTICE STARK, who deemed himself disqualified, concur.

Rehearing denied May 22, 1928.