NASH, APPELLANT, *v.* CLIFTON, APPLEGATE & TOOLE ET AL., RESPONDENTS.

(No. 8333.)

(Submitted November 22, 1943. Decided January 24, 1944.)

[144 Pac. (2d) 997.]

458

*Mr. W. E. Keeley* and *Mr. James B. Castles,* for appellant, submitted a brief; *Mr. Keeley* argued the cause orally.

*Mr. Howard Toole* and *Mr. W. T. Boone,* for respondents, submitted a brief; *Mr. Toole* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

Plaintiff has appealed from a judgment in his favor but one which was not for the amount he sought. The suit is for an accounting between himself and Clifton, Applegate and Toole, a corporation.

In 1920 the defendant corporation entered into a contract to construct a tile drain for the Big Lake Drain District in Stillwater county. It performed some work on the project but not

desiring to continue it subcontracted to the plaintiff Nash, who agreed to finish the work. The plaintiff completed the work and the only dispute in this case is whether there has been a correct distribution between the plaintiff and defendant of the amounts received from the Drain District. Specifically the only amount in controversy is the sum of $34,258.35 which sum represents the proceeds of a judgment recovered in a suit brought against the Drain District. (*Clifton, Applegate & Toole* v. *Big Lake Drain District No. 1,* 82 Mont. 312, 267 Pac. 207.) The principal amount of the judgment was $20,162.21 with interest from June 23, 1921, until the judgment was paid in 1929.

The plaintiff alleges that he has due from defendants "at least $16,552.93." The statement furnished by the defendants sets out the manner in which the proceeds of the judgment were divided. That statement is as follows:

"Paid to Nash .................................................................$ 15,205.42
  Paid to Clifton, Applegate & Toole ..............................  11,141.51
  Paid to Wood & Cooke ..................................................  7,911.32

     Total ....................................................................$ 34,258.25
"The $11,141.51 which went to Clifton, Applegate &
    Toole out of the judgment was made up as follows:
"Original equity as set up in Defendants' Exhibit D
    which was the accounting sent to Mr. Nash before
    the litigation was started ......................................  5,649.45
Costs and advances to carry on the litigation ............  4,046.24
Interest on costs and advances ......................................  665.77
Interest on original equity ..............................................  3,167.45

     Total ....................................................................$ 13,528.91
Less payment to attorneys Wood & Cooke .................  2,454.83

                                                                          $ 11,074.08
Plus overcharge of ...........................................................  67.43

Balance retained by Clifton, Applegate & Toole ........$ 11,141.51

The judgment rendered by Judge Ralph Arnold, sitting *pro tempore,* is based upon defendants' statement of account. The judgment included the $67.43 which defendant admitted it owed to Nash, together with the item of $665.77 entitled "Interest on costs and advances." The latter item was held to be not a proper charge of the Clifton, Applegate and Toole Corporation since it had as much interest in the outcome of the suit against the Drain District as did Nash. Therefore the judgment rendered was for $1,263, which amount included the above two items together with interest. No contention is made that the judgment as to these two items was not correct.

The amount included in defendants' statement of account as the original equity is the first point of controversy here. The defendant claims that at the time the project was turned over to Nash they had an equity amounting to $5,649.45. The plaintiff Nash contends that that equity amounted to but $4,079.42. To substantiate his view Nash relies upon the original subcontract in which the figures "4079.42" had been inserted in ink. Judge Arnold, however, found that "said figures as so inserted were not a part of the agreement as executed by the defendant Clifton, Applegate & Toole and the Court finds that the said figures therein are not and were not a part of the agreement between the parties."

That portion of the original contract is as follows: "That the party of the second part is to take over said contract and the
$4079.42
work as it now stands, is to pay the party of the first part all expenses incurred by it in the way of bonds, litigation, supervising expense, small tools, and all other expenses connected therewith, a statement of which is to be furnished by the party of the first part herein, and an adjustment of all of the same to be made between the parties thereto. The party of the second part is to furnish the party of the first part with a bond in the sum of Thirty Thousand Dollars ($30,000), to be approved by it, for the faithful performance of the terms of said contract, the paying of all labor bills and all expenses in connection therewith

and to save the party of the first part harmless for and on account of anything done in connection with the completion of said contract. The party of the second part is to perform the contract in all its particulars and abide by all the terms and conditions thereof; and the party of the first part agrees to turn over and deliver to the party of the second part all estimates, monthly checks and other returns from said work, it being understood and agreed that the party of the second part is to take said contract off from the party of the first part so that the party of the first part will be reimbursed for all that the contract now stands said party of the first part, but without any profit.''

We are constrained to accept the trial judge's finding. There are many features about the matter, such as the testimony of V. J. Applegate, the appearance of the insertion and the coherence of the language with and without the inserted figures which are sufficient to raise a conflict. In such a situation we cannot disturb the finding of the trial judge.

We have then a contract which contemplates that an equity exists in favor of the defendant and the amount to be fixed later. As to the fixing of the amount the defendant claims that the sum of $5,649.45 was fixed as between the parties by a statement of account accompanying an assignment of April 29, 1922, in which the defendants assigned the payments to come from the Drain District to Nash.

The plaintiff disputes the validity of this assignment and claims it was never binding between the parties. On the other hand, the plaintiff asserts the validity of an assignment made April 2, 1921, assigning all of the payments from the Drain District. The defendant urges that this assignment is inoperative since it was executed without authority on the part of W. E. Applegate, a brother of the defendant A. J. Applegate.

Due to the fact that the defendant was the original contractor, it seems that it was generally accepted by the parties to be primarily liable for the construction and that all estimates were to be paid to it. This situation seems to have been the cause of the alleged April 2, 1921, assignment. Prior to that date Nash had

expressed his unwillingness to go on with the construction unless he had an assignment of the estimates, those being the amounts payable monthly on the basis of the amount of work estimated to be completed. On April 2, 1921, W. E. Applegate, a foreman employed by the defendant, executed an assignment purporting to be upon behalf of the Clifton, Applegate and Toole Company. The trial court found that this assignment was not binding between the parties. It is pointed out by the defendants' brief, and we can find nothing to support a contrary conclusion, that the plaintiff, being under the burden of proving W. E. Applegate's authority of agency, did not substantiate his contention that the assignment of April 2nd was a valid assignment binding both parties.

The assignment upon which the defendant relies to show a statement of account was alleged to have been made April 29, 1922. In that regard it appears that prior to the commencement of the litigation from which judgment was obtained against the Drain District there was correspondence between plaintiff and defendant in regard to each other's status. In February 1922 the defendant wrote a letter to plaintiff containing the following language:

"Also we would like to know under what arrangement the costs and expenses of the suit are to be paid and just how the benefits resulting from a suit, if any, are to be divided.

"It seems to us that all of these matters should be cleared up definitely before any action is taken. In fact I think we would wish to insist that a definite understanding be had with you relative to these matters before we would authorize action to be taken in our name."

Later the defendant wrote the following letter to Mr. Sterling Wood, an attorney who handled the suit against the Drain District:

"We are enclosing herewith, in duplicate, assignment to G. H. Nash to cover the proceeds of any judgment which may be secured against Stillwater County, on account of the Big Lake

Drain project, less the amount which is now due us account of our expense in connection with the work.

"We are also enclosing a statement which shows how we arrive at the $5649.95, as claimed by us.

"When Mr. Nash was here last Monday we requested him to stay over another day so that he could check up with us any matter he wished to, but he advised he could not do so on account of a prospective job at Glendive, Montana, on which bids were to be opened on May 1st. We then suggested that he have some Certified Public Accountant check over the figures, but this did not meet with his approval.

"He requested Mr. Applegate to take up with our attorney, Mr. Parker Kimball, the matter of leaving the exact amount due us out of the assignment and to settle this at some later date, but Mr. Kimball advises us that we should not do this, and that the best time to settle it, if there is any dispute, is at this time rather than at some later date.

"We are very confident that our figures are correct; and we have all our supporting papers to support same and are ready at any time to go into the matter with Mr. Nash, or his representative, at any time he may desire to come to Spokane."

On May 4, 1922, Wood sent the assignment and statement of account to Nash. From that time until the termination of the suit against the Drain District there is no indication in the record that Nash communicated any objection to the statement of account accompanying the assignment of April 29, 1922. It is the respondent's contention that Nash was presented with an "account stated" and that his failure to object must be taken as his assent to the correctness of the account. This court has established this principle in the case of *O'Hanlon Co.* v. *Jess*, 58 Mont. 415, 193 Pac. 65, 66, 14 A. L. R. 237, wherein it is said: "It is quite generally held that where parties have been engaged in a course of dealings and there is an antecedent indebtedness in favor of one as against the other, and an account or bill purporting to be a statement of the account is rendered by the creditor to the debtor, who retains the same for an unreasonable length

of time without objection, this is evidence of his assent to the correctness of the account, and, accordingly, is an account stated. (See 1 Corpus Juris, p. 691, sec. 276; page 695, sec. 288. See, also, cases in Decennial and Century Digests, Account Stated, sec. 6.)'' See, also, *Baldwin* v. *Silver*, 58 Mont. 495, 193 Pac. 750; *Norum* v. *Ohio Oil Co.*, 83 Mont. 353, 272 Pac. (2d) 534, and cases there cited. We think the facts in this case bring it within the rule announced in those cases.

Some contention is made upon the allowance of the sum of $3,167.45 as interest upon the original equity of the defendant. There is no question but what this was a proper allowance. It has been found that the defendant had an interest to the extent of $5,649.45 in the judgment collected from the Drain District. The interest on defendant's equity was included in the judgment against the Drain District and the defendant was entitled to it and plaintiff could have no right to claim it.

The only other point in the case is that of the reasonableness of the attorney's fees allowed to the firm of Wood and Cooke. We cannot find that they were excessive.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and ADAIR concur.

MR. JUSTICE MORRIS did not hear the oral arguments and takes no part in the opinion.