OSBORNE, RESPONDENT, v. SUPREME LODGE, KNIGHTS
OF PYTHIAS, INSURANCE DEPARTMENT, APPEL-
LANT.

(No. 5,333.)

(Submitted November 19, 1923.  Decided January 11, 1924.)

[222 Pac. 456.]

*Fraternal Life Insurance—Failure of Consideration—Recovery
Back of Premiums—Forfeiture—Waiver—Presumptions.*

Life Insurance—Estoppel—Waiver of Condition of Contract—When
Question of Law.
 1. Whether an insurance company has waived a condition of the
 contract of insurance is a mixed question of law and fact; where,
 however, the facts are agreed upon, the question whether or not it
 has been estopped from claiming its rights under the policy by
 reason of what it has done or failed to do is one of law.

Fraternal Life Insurance—What Constitutes Contract.
 2. In an action on a certificate of life insurance issued by a fra-
 ternal insurance society, the certificate together with the applica-
 tion and the provisions of the constitution and by-laws of the
 society applicable constitute the contract between the parties.

Same—Recovery Back of Premiums—Test for Right to Recover.
 3. In an action to recover back life insurance premiums ·alleged
 to have been paid without consideration and under the mistaken
 idea that the policy was still in force, whereas it had been for-
 feited for noncompliance with its conditions, the test whether plain-
 tiff can prevail is: could his beneficiary have collected the amount
 thereof had the insured died in the meantime?

Same—Waiver of Forfeiture—Knowledge of Facts Prerequisite.
 4. A waiver consists of the relinquishment of a known right;
 hence where a fraternal insurance society in ignorance of the in-
 sured's suspension in his local lodge, which suspension *ipso facto*
 forfeited the policy, for seven years accepted the premiums from
 plaintiff, it did not waive its right to declare a forfeiture by such
 acceptance.

Presumption cannot Rest upon Inference.
 5. A presumption cannot rest upon an inference.

Fraternal Life Insurance—Recovery Back of Premiums Paid—Failure
of Consideration.
 6. Where by the constitution and by-laws of a fraternal insurance
 society it was made the duty of the insured to notify the insurer
 of the fact of his suspension from the subordinate lodge, which
 he failed to do, and forfeiture of the certificate of insurance *ipso
 facto* resulted from suspension, but the insurer, without knowledge

 4.  Waiver of forfeiture of benefit certificate for nonpayment of as-
sessments or dues by acceptance of arrearages or similar act, see notes
in 11 Ann. Cas. 539; Ann. Cas. 1914C, 437; Ann. Cas. 1916D, 591; 25
L. R. A. (n. s.) 78.

of the suspension, for seven years thereafter accepted premiums from the insured, his beneficiaries could not have recovered on the certificate in case of his death because of forfeiture, and hence he was entitled to a return of the premiums for failure of consideration. (Rev. Codes 1921, sec. 8132.)

*Appeal from District Court, Fergus County; Rudolf Von Tobel, Judge.*

ACTION by Charles G. Osborne against the Supreme Lodge, Knights of Pythias, Insurance Department. Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. Worden & Grant* and *Mr. Geo. H. Bangs,* for Appellant, submitted a brief; *Mr. Edgar G. Worden* argued the cause orally.

*Mr. R. S. Harrington* and *Mr. Charles J. Marshall,* for Respondent, submitted a brief.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was brought to recover from the defendant the sum of $515.70, the aggregate of insurance premiums on plaintiff's life, alleged to have been paid without consideration and by mistake, from June 30, 1914, to May 1, 1921, together with interest. Two causes of action are stated: The first for premiums paid from June 30, 1914, to April 1, 1921, together with interest thereon; and the second for the sum of $10.45, paid in April, 1921, with interest from May 1, 1921. By its answer the defendant admitted the payment of premiums made as alleged, but denied any mistake or want of consideration. New matter alleged in the defendant's answer was denied by plaintiff's reply. Upon issues so made the cause was submitted to the court for decision upon an agreed statement of facts. It appears, so far as pertinent for decision of this appeal, that on April 8, 1896, a policy of life insurance was issued by the defendant to the plaintiff upon his written application therefor, which was subsequently surrendered and another policy substituted December 8, 1902. By reason of the

plaintiff's failure to pay dues to his subordinate lodge for the month of January, 1904, he was suspended; but later, on his application, he was reinstated on June 30, 1904, and remained in good standing until again suspended on June 30, 1914. On November 1, 1907, on his application, two policies under plan D, aggregating $3,000, were issued to him by the defendant, which policies recite that "the charter, all the laws, rules and regulations of the society governing the Insurance Department, now in force and as the same may be hereafter changed, altered, added to, amended" constitute a part of the contracts. It is provided: "After this certificate has been in full force thirty-six consecutive months (three years) from the date hereof, it shall be incontestable, except for failure to pay the regular monthly payments or assessments, for cessation of membership in the Order Knights of Pythias," *etc.* It is provided that "after the member has made all payments required and paid all assessments for thirty-six consecutive months, he shall be entitled to surrender values" stated. The amount of paid-up and extended insurance after three years are then shown by a table contained in the policy. After three years the member is entitled to a paid-up certificate to the amount of $58, or extended insurance for a period of 117 days, and after six years, he is entitled to a paid-up certificate for $230, or extended insurance for 311 days. Further it is provided: "Loss of membership in his subordinate lodge by the member holding this certificate shall not operate to forfeit same if it has been commuted into a paid-up or extended contract, * * * but in such case the member shall be deemed a member of this society, for the purpose of maintaining such certificate, until the expiration of the period of extended insurance, or the maturity of the paid-up certificate; and, further, if the member holding this certificate shall, after making all payments required, and paying all assessments for thirty-six consecutive months hereunder, lose his membership in his subordinate lodge, then this certificate shall, *ipso facto,* upon the occurring of such loss of membership, be commuted

into paid-up insurance or extended insurance. \* \* \* When
the member attains the age of sixty-five years, this contract
shall cease and determine, and thereafter there shall be no
liability under the same by either of the parties hereto. The
member may, however, before or upon reaching age sixty-
five, transfer to plan A without expense or medical examina-
tion at attained age.''

From June 30, 1914, the date of his last suspension from
his subordinate lodge, to April 1, 1921, the plaintiff paid as
premiums on the two policies of insurance so issued to him
on November 1, 1907, the aggregate amount of $505.25. The
plaintiff attained the age of sixty-five years on April 9, 1921.
On March 29, 1921, eleven days before the plaintiff reached
the age of sixty-five years, he surrendered the two last-men-
tioned policies with his application to the defendant to be
transferred to plan A, and a policy under plan A was issued
and delivered to him, dated April 7, 1921. He paid one
month's premium thereon, *viz.*, for April, 1921, amounting
to $10.45. In his last-mentioned application it is recited, on
a printed form provided by the defendant: ''I am a member
in good standing of section No. —— and of a subordinate
lodge, Knights of Pythias.'' In the agreed statement it is
recited: ''That on June 30, 1914, the plaintiff was suspended
from membership in the said subordinate lodge of the defendant
by the said subordinate lodge; that neither the plaintiff nor
the defendant learned of such suspension until on or about
the 30th day of July, 1921; that the monthly premium pay-
ments made as hereinbefore set forth by the plaintiff were
made by him for the purpose of maintaining the policies in
full force and effect and without any intent to defraud the
defendant, and were accepted by the defendant in ignorance
of any suspension of the plaintiff; that the plaintiff never at
any time notified the defendant in writing, as he was required
to do by the laws and supreme statutes of the Insurance De-
partment, Knights of Pythias, by registered mail or otherwise
of the fact of his suspension on June 30, 1914.'' Further:
''That membership dues in the subordinate lodge are paid to

the secretary of the subordinate lodge, but that the premiums upon the certificates of membership or policies of insurance are paid by the insured through the secretary of the section, which is the subordinate or local branch of the insurance department and each member of the insurance department, in addition to maintaining his membership in the subordinate lodge, must maintain membership in a section of the insurance department, and is entirely independent of dues paid for membership to the subordinate lodge to which the insured belonged; that the secretary of the subordinate lodge has no authority or power to collect the premiums of insurance paid on the certificates of membership or policies of insurance issued by the Supreme Lodge, and that the receipts held by the plaintiff are signed by the secretary of the section and not by any officer of the subordinate lodge of which he was a member.''

The court found for the plaintiff on his first cause of action, and that he take nothing on his second cause of action. Judgment was entered in favor of plaintiff for $556.85 and costs, making a total judgment of $568.35. The appeal is from the judgment.

No question is raised by the assignments of error regarding the correctness of the amount for which judgment was entered in favor of the plaintiff, therefore we will accept the amount stated as being correct; and, as no error is predicated on the ruling of the court respecting the second cause of action, we will not consider the propriety of the court's action thereon.

But one question raised by defendant's assignments of error is necessary to be considered in disposing of the appeal, *viz.:* Is the judgment contrary to law?

The action was brought under the provisions of section 8134 of the Revised Codes of 1921, which provides: ''A person insured is entitled to a return of the premium when the contract is voidable, on account of the fraud or misrepresentation of the insurer, or on account of facts, of the existence of which the insured was ignorant without his fault; or when, by any default of the insured other than actual fraud, the insurer never incurred any liability under the policy.''

Each case must rest upon its own facts and must be deter-
[1]   mined by the general rule applicable to all kinds of con-
tracts, for what might under some circumstances estop the
insurer would not in another case where the facts were only
very ·slightly different. Whether a party has waived a con-
dition in a contract is a mixed question of law and fact, but
when the facts are found it is for the court to say whether
or not the insurer has been estopped from claiming its right
under the policy by reason of what it has done or failed to
do. (Bacon on Benefit Societies and Life Insurance, sec. 434.)

The policy of insurance, together with the application and
[2]   the provisions of the constitution and by-laws of the
order applicable, constitute the contract between the parties.
(*Kennedy* v.· *The Grand Fraternity,* 36 Mont. 325, 25 L. R. A.
(n. s.) 78, 92 Pac. 971.)

In the case above cited it was held that the failure to pay
dues forfeits a mutual benefit certificate, where the constitution
and by-laws of the society provide that upon such failure the
benefit certificate shall become absolutely void.

We appreciate the rule, and subscribe thereto, that the con-
stitution and by-laws of a mutual benefit society enter into and
form a part of the contract of insurance evidenced by the in-
surance policy, and that they must be looked to in determin-
ing the rights and liabilities of the parties (sec. 6313, Rev.
Codes 1921; 29 Cyc. 68), especially so when, in instances such
as the case before us, the insurance policy makes special refer-
ence thereto, and provides that they are to be considered as a
part of the contract. Moreover, by the agreed statement of
facts in the case under consideration it is expressly stated
"that the constitution and by-laws of the defendant, * * *
constituted a part of the provisions of the * * * policies
of insurance." Accordingly the supreme statutes of the so-
ciety are a part of the contract of insurance. Supreme stat-
utes numbered 194, 461, 518 and 530 are as follows:

"(194)   Whenever any member of a subordinate lodge shall
be declared expelled from the order or suspended from mem-
bership therein for any cause, such member shall immediately,

and in writing, notify the board of control of such fact by registered letter, addressed to the Insurance Department, Supreme Lodge, Knights of Pythias, at the home office of such Department at Indianapolis, Indiana, and until receipt of such notice, the Supreme Lodge or the board of control shall not be bound to take notice of such suspension, and the acceptance of the regular monthly payments, due from the member to the Insurance Department, shall not bind such Supreme Lodge or estop it from asserting a forfeiture of such membership in the Insurance Department, under the terms and conditions of Supreme Statute 518.''

'' (461)   *General Rights Defined.*   No officer of a section and no officer of the Insurance Department shall possess or have the power to waive any of the requirements or laws of the Supreme Lodge, nor shall they, by any course of dealing or conduct, bind the Supreme Lodge or estop the Supreme Lodge from insisting upon the strict observance and enforcement of all laws. No member of the Insurance Department shall gain any right by reason of the misconduct, omission, or malfeasance of an officer. The right of the Supreme Lodge at all times, as the representative of the aggregate membership in the Insurance Department, shall be superior to the rights of individual members claiming rights by reason of some course of dealing or conduct of an officer, in violation of the laws of the Supreme Lodge.''

'' (518)   Whenever any member of the Insurance Department withdraws from his subordinate lodge, or whenever his membership therein ceases from any cause other than by his death, his membership in the Insurance Department terminates and his benefit certificate therein *ipso facto* forfeits,'' *etc.*

'' (530)   *Waiver of Supreme Lodge Law Not Allowed.*   The receipt and retention of payments and assessments from members by the Insurance Department shall not constitute a waiver of any law of the Supreme Lodge, or defense which might be relied on had such payments not been received and retained. No course of dealing between members and officers, whether persisted in for a long or short time, shall waive this provision,

or the effect of same; all of said laws enacted by the Supreme Lodge, having been enacted by it in its representative and legislative capacity only, in which every member is a party, are intended to bind all members at all times."

Thus it will be seen that by the express provisions of the **[3]** supreme statutes the plaintiff's policy of insurance became *ipso facto* forfeited upon his suspension from his subordinate lodge on June 30, 1914. He was thereafter under the contract entitled to extended insurance without local lodge affiliations or further payment of premiums to the insurance department until May 12, 1915. Forfeiture of the policy was accomplished under its terms, unless the continued acceptance of premiums after the suspension of the insured from his local lodge be held to be a waiver. The agreed statement of facts recites "that neither the plaintiff nor the defendant learned of such suspension until on or about June 30, 1921." During all of this time, full seven years, the plaintiff paid and the defendant received and accepted insurance premiums or assessments from the plaintiff. Under such circumstances, we think the test is whether or not the beneficiaries could have collected on the policies had the plaintiff died on or about March 28, 1921.

As said by Justice Shauck, in *Metropolitan Life Ins. Co.* v. *Felix,* 73 Ohio St. 46, 4 Ann. Cas. 121, 75 N. E. 941: "Since it cannot be assumed that we are dealing with a sporadic case of philanthropy, we must inquire whether the company bore a risk in consideration of the premiums paid." The insured would be entitled to a return of premiums paid to the whole amount thereof, where there existed no obligation or liability on account of the risk insured against. (Sec. 8132, Rev. Codes 1921.) This court has held that a single act of acceptance of an insurance premium after it becomes due by the terms of the policy does not estop the insurance company subsequently to declare a forfeiture of the policy for nonpayment of the premiums on the due date. (*Collins* v. *Metropolitan Life Ins. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092.)

In the case before us, seven full years the insurance was

unquestionably in effect, and for an additional seven years the defendant accepted the premiums paid by the plaintiff on his insurance, treating him as a member of the order in good standing. As late as April 7, 1921, two days before the insured reached the age limit of sixty-five years, under the plan D contracts the insurer accepted plaintiff's application to change from plan D to plan A, and issued a new policy to him. This was accomplished on plaintiff's representation that he was in good standing in his local lodge. However, from the agreed facts it appears that the parties mutually acted upon the hypothesis that the insurance was continuously in existence from June 30, 1914.

We have made exhaustive independent research to find a like case. The nearest thereto, so far as we have been able to discover, are the cases of *Knights of Pythias* v. *Kalinski*, 163 U. S. 289, 41 L. Ed. 163, 16 Sup. Ct. Rep. 1047 [see, also, Rose's U. S. Notes], and *Monahan* v. *Mutual Ins. Co.*, 103 Md. 145, 5 L. R. A. (n. s.) 759, 63 Atl. 211. In both of these cases the insurance company was· held to have waived the stipulations of the policy, holding the insurer chargeable with knowledge from facts before it and that its ignorance in ·fact of matters with which it should have knowledge by a proper attention to business, furnished no excuse. In the *Kalinski Case*, however, it appears that the insured was not in fact suspended from his subordinate lodge, and ''under the laws, rules and regulations for the government of sections of the endowment rank, it was the duty of the secretary of each section to keep a financial account with each member of the section, and in January of each year to furnish to the master of finance of the lodge to which the members of the section belonged, a list of the names of such members, and to request the officer to promptly inform him whenever a member on said list became in arrears for the amount equal to one year's dues. * * * It seems to have been also the duty of the keeper of records and seal of each lodge to notify the proper section of the endowment rank, whenever a member became in

arrears for dues to the lodge, when, and not until then, the certificate of membership in the endowment rank became the subject of forfeiture. Indeed, the failure to do this, and the continued receipt of the monthly assessments upon the policy * * * appear to have been treated by the board of control as a waiver of the right to insist upon the forfeiture of the * * * policy.''

In the *Monahan Case* the insurance company had issued one policy on the life of the insured, and in making application for a second policy the insured warranted the truthfulness of his representation to the effect that no policy of insurance had previously been issued by the company. This statement was not known to the insured to be false. The insurer accepted the application and premiums on the second policy, and the right to declare a forfeiture of the contract was denied the insurer. It was held chargeable with a waiver, notwithstanding its alleged ignorance of its own records.

In both of these cases it is noted that the insurer had facts before it in its own records, whereas in the present case the duty devolved upon the insured to advise the insurance depart-- ment in writing of his suspension from his local lodge; nearly seven years after he had been so suspended, he represented to the insurance department that he was in good standing in his local lodge, and the insurance department did not discover the fact of his suspension until the lapse of seven years from the date thereof.

By the provisions of the by-laws of the defendant noted, the re-
[4]    ceipt and retention of premiums on a policy by the insurance department does not constitute a waiver of any requirement on the part of the insured, or constitute a defense which can be relied upon were payments not so received and retained; and this whether such dealings have been of long or short duration. Independent of this regulation of the organization, the record facts are not sufficient in law to charge the defendant with knowledge sufficient to constitute a waiver of the conditions imposed.

Mr. Bacon, in his work on Benefit Societies and Life Insurance, says: "A waiver of a stipulation in an agreement must, to be effectual, not only be made intentionally, but with knowledge of the circumstances. This is the rule where there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement, either verbal or in writing, to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party." (Third ed., sec. 423.)

Generally a waiver consists of the intentional relinquishment of a known right.   (27 R. C. L. 904.)   It cannot exist unless the party affected has knowledge of the subject matter or by reason of the circumstances, knowledge is imputed to him. [5] But a presumption of the relinquishment of a known right cannot rest on an inference that it was known.   Where as in this case, the defendant was totally in ignorance of the plaintiff's suspension from his local lodge, and under the contract no duty rested on the defendant to know such fact in connection with the receipt of the insurance premiums, a waiver by acceptance of premiums cannot be said to exist. We must look to the stipulations contained in the policy for guidance.   By its express terms it is found that the policy becomes *ipso facto* forfeited whenever the insured is suspended from membership in his local lodge, and the duty is placed on him by the by-laws to immediately notify the insurance department of the Supreme Lodge in writing addressed to its home office.

The insured is presumed to know his own contractual obligations.   It was his duty to know whether or not he was suspended from his local lodge, and no reciprocal obligation rested on the defendant.   The society under the terms of the contract properly looked to the insured for such information. "Where, as is frequently the case, it is provided in the contract of membership in a mutual benefit society that failure on the part of a member to pay dues or assessments shall operate *ipso facto* to forfeit his rights as a member, or where the words used are to the effect that a forfeiture shall immediately

result from such failure, these provisions are self-executing, requiring no affirmative action on the part of the society, and the rights of the member under his certificate are forfeited forthwith on his failure to pay his dues or assessments." (19 R. C. L. 1272.)

The plaintiff under the circumstances must be held to be **[6]** chargeable with knowledge of the consequences of his suspension from the local lodge and his failure to notify the Supreme Lodge thereof, and in this connection, under the facts, it should be borne in mind that he was suspended from his local lodge in the year 1904, and was later reinstated upon his application. The fact that the plaintiff did not know of his last suspension from the local lodge in the year 1914 was his own fault, and the society cannot be chargeable under the facts with any dereliction on its part. Instead of advising the society of his suspension from his local lodge, as late as March 29, 1921, the plaintiff, in applying to change the form of his insurance, represented that he was in good standing with his local lodge. Under the circumstances it cannot be held that there was a waiver of the provisions of the contract by the society. Were the beneficiary now before us on the same state of facts claiming right to collect on the policy after the death of the insured, we would be forced to rule against them. In consequence there was no consideration for the premiums paid from June 30, 1914, and the plaintiff had a right to recover them back. The defendant holds the money, paid as premiums by the plaintiff since June 30, 1914, the date of his suspension from the local lodge, as an involuntary trustee.

For the reasons stated, the judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Stark concur.

Rehearing denied February 5, 1924.