POLLEY'S LUMBER CO. v. UNITED STATES.

UNITED STATES FIDELITY & GUARANTY CO. v. SAME.

No. 9425.

Circuit Court of Appeals, Ninth Circuit.

Nov. 23, 1940.

Howard Toole, W. T. Boone, and Donovan Worden, all of Missoula, Mont., for appellants.

Norman M. Littell, Asst. Atty. Gen., John B. Tansil, U. S. Atty., of Butte, Mont., and Norman McDonald, Charles R. Denny, Frank J. Dugan, and Roger P. Marquis, Attys., Department of Justice, all of Washington, D. C., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from a judgment in favor of the government, entered on a directed verdict, in a suit on behalf of the Flathead tribe of Indians and certain individuals of the tribe.

In 1928, appellant Lumber Company and the Superintendent of the Flathead agency entered into a contract for the sale of timber located on lands in the Flathead Reservation. By the terms of the contract the Lumber Company agreed to cut and pay for at least 12,000,000 feet of timber prior to March 1, 1933, and not less than that amount each year thereafter, all of the timber sold to be removed by 1943. The unit prices for the period ended March 31, 1934, were fixed at $4.06 per thousand feet for pine and $3 for fir and larch. These prices were to be upped 12% for the ensuing three year period, and further increases might be made for subsequent periods should the Commissioner of Indian Affairs find such increases fairly representative of then existing stumpage values.

The general Timber Sale Regulations were made part of the contract. Regulations 52 and 56, relating to breach by the purchaser and to the ascertainment of damages, are as follows:

"52. * * * Persistent failure to comply with any one of the requirements of the contract or regulations after written notice addressed to the purchaser by the superintendent or the officer in charge will be ground for revocation by the officer approving the contract of all rights of the purchaser under this and other contracts and the forfeiture of his bond and of all moneys paid, *and the purchaser will be liable for all · damage resulting from his breach of contract.*

* * * * * *

"56. * * * *Failure of the purchaser to complete his contract* or to log promptly an area damaged by fire, wind, insects, or other causes, or the commission by him of any act for which the officer approving this contract shall declare the contract forfeited, *will render the purchaser and his bondsmen liable for the depreciation in the value of the remaining timber on an estimate of value and quantity to be made under the direction of the officer approving this contract.*" [Emphasis supplied].

Because of adverse economic conditions the time for cutting was extended; and in August, 1934, a modified agreement was entered into relieving the purchaser from some of the more onerous terms of the sale. The original contract and the regulations were deemed modified or abrogated so far as inconsistent with the new agreement. We may say at this point that we find nothing in the modified agreement which could properly be construed as an abrogation or alteration of the regulations just quoted.

Appellant failed to cut any timber or to perform otherwise and in consequence the contracts were, in October, 1935, declared forfeited. At that time a Mr. Muck, assistant director of forestry for the Indian Service, shown by the record to be an experienced and qualified man, was ordered to make a report "covering the appraisal of damages suffered by the Flathead Indians due to the failure of· the Polley's Lumber Company to carry out the terms of the contract." Pursuant to these instructions, and in line with the regulations, Muck determined that the depreciation in the market value of the timber as of the date of the breach was $83,490. The

purchaser and its surety[1] refused to pay the estimate and this action was commenced.

At the trial Muck was called as a witness. The government's proof of damages consisted of his appraisal and his explanation of the basis on which it was made. After an extensive cross-examination of the witness appellants moved to strike his testimony upon the ground that the method he had employed was unsound and unreasonable. The court denied the motion, ultimately holding the appraisal conclusive in the absence of a showing of fraud or bad faith. The ruling upon this motion, and the ultimate holding, furnish the grounds on which reversal is sought.

Muck's estimate of damages, made pursuant to regulation 56, was based upon the difference between the contract prices and the prices for which a similar contract could have been negotiated at the date of the breach. He did not attempt to forecast stumpage prices, but rested his appraisal upon a comparison between the value of the contract in 1928 and the value of a similar contract in 1935 contemplating a similar logging program. In estimating the prices obtainable under a similar contract, as of 1935, Muck first computed the weighted average of wholesale lumber prices in the Spokane area for the three years—1925, 1926, 1927—immediately preceding the date of the contract. For these prices he had recourse to Forest Service bulletins based on data compiled by the Western Pine Manufacturers' Association. Comparing these weighted average prices with the stumpage prices stipulated in the contract, Muck found that the latter were approximately 15% of the wholesale lumber prices.

Muck next computed the weighted average wholesale prices of lumber for the period 1928 to 1935, including three quarters of the latter year, explaining that he used this long period because of instability in the prices which prevailed during the depression. After considering numerous factors, such as the trend of logging costs and stumpage values, he concluded that the 15% ratio between lumber prices and stumpage rates was properly applicable at the time of the breach in 1935; and he then computed the prices which the timber would have brought if offered for sale at that time upon terms similar to those contained in the 1928 contract. These prices were $3.31 for pine and $2.62 for fir and larch. The difference between these and the base contract prices constituted his estimate of the depreciation in the fair market value of the timber.

It is conceded that the Lumber Company breached its contract and is liable to respond in damages if there were any; and the parties are not at variance in their interpretation of the phrase "depreciation in value" as contained in regulation 56. Appellants concede that the phrase has reference to damages, not to the mere physical deterioration of the timber. Questions on that score were set at rest in the cognate case of United States v. Harris, 100 F.2d 268, decided by this court.

1. It is first contended that the estimate of damages made under regulation 56 was not intended by the parties to be conclusive, and that if so intended, a provision of the sort is invalid under the Montana law.

In United States v. Harris, supra, a suit involving the same regulation, we held that the determination of damages under the direction of the Secretary of the Interior was a duty imposed by the terms of the contract and that it was to be presumed the duty was performed. Further, that the determination, when made, was binding in the absence of a showing of fraud or bad faith. The rule is applicable here. It is true the regulation does not in express terms make the estimate conclusive, or in so many words preclude the purchaser from introducing evidence at variance with the estimate. But plainly, if the provision had any purpose, the purpose was to make the mode outlined for the assessment of damages the exclusive mode. By agreeing to accept the determination of the government officer the parties presumably sought to avoid the usual battle of experts and to eliminate the difficulties attendant upon the computation of damages in a judicial proceeding.

It is settled by the great weight of modern authority that contract provisions which do not purport to oust the courts of their jurisdiction to decide questions of ultimate liability, but which merely refer to third persons the determination of value or the amount of damages, are valid. Note 47 L.R.A.,N.S., 337, 381, 385, and cases

---

[1] The performance bond furnished by appellant was in the amount of $30,000 with appellant U. S. Fidelity and Guaranty Co. as surety.

cited; Williston, Contracts, 1936, § 1921A, pp. 5373-5377; Hamilton v. Liverpool & London & Globe Ins. Co., 136 U.S. 242, 255, 10 S.Ct. 945, 34 L.Ed. 419; Gauche v. London & Lancashire Ins. Co., C.C., 10 F. 347, 355. The provision in question does no more than that. The officer's function was essentially that of an appraiser.

■ For present purposes we assume the Montana law to be controlling. But we do not understand that the law there is at variance with the generally· accepted rule on the subject. Appellants refer to a Montana statute providing that "Every stipulation or· condition in a contract by which any party thereto is restricted from enforcing his rights under the contract; by the usual proceedings in the ordinary tribunals * * * is void." Revised Codes of Montana (1935), § 7558. The statute was applied in Wortman v. Montana Central Ry., 1899, 22 Mont. 266, 56 P. 316, 318, involving a provision to the effect that "should any difference arise as to the construction of this contract or any provisions of it, or relating to the performance of the contract, such matter of difference shall be decided by said chief engineer, and his decision shall be conclusive as to the matter in dispute." The court held this provision void insofar as it sought to attach finality to the engineer's interpretation of the contract, but said it was valid to the extent that it gave the engineer authority to decide whether the specifications of the contract had been complied with. The statute was said to embody the common law rule relating to arbitration agreements.

In a later case, however, the court, without overruling. the Wortman case, expressed its disapproval of the rule there applied, describing it as an "anomaly", and declared that "Its operation should not be extended by construction, nor should it ever be invoked to nullify or impair contractual provisions not clearly infected with the supposed evils intended to be cured or prevented." Cotter v. Grand Lodge A.O.U.W., 1899, 23 Mont. 82, 57 P. 650, 652. More recently still the court remarked that "It is the policy of the law to favor the settlement of disputes by arbitration and every reasonable intendment will be indulged to give effect to such proceedings." Clifton, Applegate & Toole v. Big Lake Drain Dist. No. 1, 1928, 82 Mont. 312, 267 P. 207, 212. And, in a case decided prior to the Wortman case, the court held that a provision "requiring that the value or quantity of a thing which might be involved in a controversy thereunder be ascertained and determined by arbitration, or in some other possible and reasonable manner, does not oust the jurisdiction of the courts, but only requires a certain character of evidence of a fact in controversy" and is valid. Randall v. American Fire Ins. Co., 1891, 10 Mont. 340, 25 P. 953, 957, 24 Am.St.Rep. 50.

■ 2. In United States v. Harris, supra, in a situation much like the present, we sustained an assessment of damages on the theory of anticipatory breach, holding that under the facts of that case a proper measure was the difference between the value of the contract and the value of a similar contract at the date of the breach. This, as has been pointed out, was the measure applied by the appraiser, and we do not believe it can be said to be improper. Where, as here, the contract delegates to a third person the task of estimating damages—no precise method being prescribed for him to follow—a reasoned discretion in the choice of methods is necessarily vested in the appraiser. Had the contract left to judicial determination the admeasurement of damages, some other measure might have been adopted by the court; but certainly the measure selected by the appraiser was not without a rational basis. And we think the same is true of the formula used in estimating the decline in stumpage values in the process of computing damages.

■ In the absence of bad faith, or of mistake so gross as to imply bad faith or the failure to exercise an honest judgment, the appraiser's estimate is to be taken as conclusive. United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; United States v. Harris, supra; Lee v. Providence Ins. Co., 82 Mont. 264, 266 P. 640; Clifton Applegate & Toole v. Big Lake Drain Dist. supra. In the case last cited the Montana court said that "an honest mistake in measurement or in judgment is not a ground for impeachment of the engineer's estimates. It is not sufficient to say that the engineer came to a conclusion of fact ·erroneously. Although the court might have made a different estimate, it may not substitute its judgment for that of the engineer."

■ Appellants offered to prove that unlike methods of determining timber val-

ues were employed by the Bureau of Internal Revenue and by the Forest Service, and proof was offered of these methods. In rejecting this evidence the court properly observed that it had no tendency to show that the method employed in this instance was unsound, but tended merely to disclose the existence of an honest difference of opinion as to the factors which should be considered. Appellants were given an opportunity to impeach the appraisement by a showing of bad faith, but they disclaimed any intention of asserting fraud or bad faith on the part of the appraiser. On the trial they went no further than to claim that the method of arriving at his estimate was unreasonable and unsound. And in their brief in this court they disclaim any intention of questioning the good faith of the officer.

On the oral argument, however, they urged that the method used by Muck was so patently arbitrary as to be fraudulent on its face. The principal complaint is that he failed to take into account factors such as the decline in logging costs, which admittedly had taken place, and which—other things being equal—would be reflected in stumpage prices. We think the criticism is not warranted. The witness testified that he took into consideration, in determining the fair market value of the timber, such factors as "price, the cost of production, the experience of the Polley's Lumber Company, comparative prices on the Flathead reservation in this immediate vicinity, and also my judgment over a period of 26 years, compared with the judgment of all the men in our organization whom I could consult with."

The witness had long been familiar with this particular stand of timber, its location, quality and accessibility. It is evident from his testimony as a whole that he did' not fail to take into account all vital factors in arriving at his estimate.

3. The government concedes that the Lumber Company is entitled to credit in the sum of $22,072.52, on account of advance payments made under the contract. It concedes also that, because of the extension of time granted the purchaser, the amount of interest for which judgment was given should be reduced to $2,946.02. We affirm, without discussion, the allowance of interest in this amount.

The judgment against the Lumber Company is accordingly reduced to $64,363.50 with interest at 6% from January 6, 1938.

Judgment against appellant Guaranty Company remains at $30,000, with interest at 6% from June 4, 1936.

Judgment affirmed as modified.