GRASS RANGE HIGH SCHOOL DISTRICT NO. 27, Plain-
tiffs and Respondents, v. WALLACE DITEMAN, Inc., a
corporation, and Phoenix Insurance Company, a Corpora-
tion, Defendants and Appellants.

No. 11556.
Decided March 4, 1970.
465 P.2d 814.

Bolinger & Wellcome, Bozeman, H. A. Bolinger, Jr., argued, Bozeman, for appellants.

William Spoja, County Atty., appeared, Lewistown, Peter L. Rapkoch, argued, Lewistown, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the opinion of the Court.

Appeal from the verdict for damages in the amount of $7,900 rendered by the district court of the Tenth Judicial District, Fergus County, sitting without a jury. Plaintiff was awarded damages because faulty construction of a gymnasium floor did not comply with contract specifications.

On April 8, 1961, defendant Wallace Diteman, Inc. (hereinafter referred to as the contractor), entered into an agreement with plaintiff Grass Range High school District No. 27 (hereinafter referred to as the school district) to construct a school building at Grass Range. The school district hired the firm of Loners and Stroebe of Billings (hereinafter referred to as the architects) to prepare the contracts and specifications for the building and to supervise construction. Defendant Phoenix Insurance Company provided the contractor's performance bond which included a clause extending liability for latent defects two years after the date of final payment on the building.

According to the requirements of the contract the contractor should have given the architects notice of his intention to pour the concrete floor in the gymnasium. No architect was present when the floor was poured; however, there is no evidence that the architects were not given notice. At the time the cement for the floor was poured the support beams for the roof were in place and the shade they provided against the unusually hot sun

created an unusual drying condition. This, coupled with the unexpected delay in arrivals of the concrete delivery trucks, contributed to the difficulties the contractor had in finishing the floor. Witnesses knowledgeable in concrete finishing testified that the rolls and hollows in the floor may have been caused by these difficulties, by lack of skill of the finishers, or by putting the troweling machine on the floor too soon.

Before the tile was laid on the floors in the building, John Diteman one of the owners of the defendant contracting company and supervisor of the construction, together with one of the architects, checked the flatness of the floors in the classroom and gymnasium parts of the building with a straight edge.

The specifications required that the surface of the floor be within a tolerance of plus of minus 1/16 of an inch from the established plane of the floor. It is the practice in the industry to measure this degree of flatness of floors by placing a ten foot straight edge on the floor and measuring the depressions under it. Witnesses testified that the specification of plus or minus 1/16 of an inch meant that the depressions under the straight edge could not be more than ⅛ or 1/16 of an inch deep, depending on which witness was testifying.

The depressions discovered in the floor by this test were filled with a patching compound and leveled. About a week later the architects checked the floor again and found a few places that needed further leveling. The floors were then approved by the architects for laying the tile surface. The contractor relied upon the architects to approve the floor before laying the tile.

Witness Ralph Cranston, the floor covering mechanic who laid the tile on the gym floor, testified that it is his practice to obtain approval from the architect before he lays tile on a filled floor. In this case he sought permission to lay the tile from architect Loners, and Loners indicated the floor was all right. Cranston testified he then began to apply the glue and tile to the floor in Loners' presence and Loners did not object to his beginning the operation.

On October 16, 1961 a prefinal inspection of the building was held. The condition of the gym floor was objected to because of particles of foreign matter under the tile causing "pimples" and because of the uneven surface of the floor. The school board took part in the final inspection of the building on October 20, 1961 and a "punch list" was issued to the contractor. A "punch list" is a listing of all unacceptable items found as a result of the inspection. The punch list was in the form of a letter to the contractor and stated as follows:

"As a result of the final inspection of this building by the Board of Trustees yesterday, the building will be accepted as of 8:00 a. m. Wednesday Oct. 25 to give the Board time to arrange for fire insurance coverage.

"Final payment, however, will be subject to completion of the below listed items as well as any other items appearing that may require attention.

"1. Gymnasium floor.—From the appearance of this floor it is going to require all tile to be lifted and grit and foreign materials removed to eliminate lumps appearing on the surface. There are also many sharp hollows in the slab that need filling and levelling. This must be done so as not to interfere with dedication Oct. 25."

Between the date of the punch list and December 8, 1961, the contractor corrected the items listed on the punch list and worked on the gymnasium floor, removing all of the tile that had lumps and leveling some of the hollows then existing.

On December 8, 1961, the architects issued the certificate for final payment for the building and on December 21, 1961, the school district made final payment to the contractor in the amount of $12,674. The agent of the defendant bonding company received a letter from the architects dated December 5, 1961, stating:

"Ditemans are to be complimented on the type of work they did for us on this job as well as their speed of operation."

Architect Loners testified he had forms available to use when-

ever he made a conditional payment, but there were no conditions injected into the final payment in this instance and the fact that the payment was made as a final payment had no bearing on any items that still had to be completed.

A one year guarantee on the building obligated the contractor to repair any defects that appeared in that period. In April 1962, the contractor received a letter from the architects complaining of defects in the gym floor. During the summer of 1962, the contractor attempted to work with a grinding machine. At that time loose tiles throughout the building were replaced, as were some tiles which had been gouged by improper moving of a piano across the floor. The contractor did not return to the building after making these warranty repairs. Plaintiff school district filed suit on June 8, 1964.

The controlling issue before this Court is the liability of the contractor for the defective floor for if the contractor is no longer liable the defendant bonding company has no liability. The school district contends that the contractor is still required to repair the floor under the requirements of the contract warranty clause:

"The Contractor shall remedy any defects due to faulty material or workmanship and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final payment * * *."

Clearly, the requirement to correct defects appearing within one year of the final payment cannot be extended to cover defects existing at the date of acceptance, or defects that appeared later than one year after final payment. The school district contends the defects existing and known to be in the floor at the time of acceptance were excluded from the acceptance and were not waived as not complying with the specifications of the contract.

This Court said in Higby v. Hooper, 124 Mont. 331, 351, 221 P.2d 1043:

"According to the weight of authority, the mere occupancy

and use by the plaintiffs of their unfinished dwelling do not constitute an acceptance of the work as complying with the contract, or amount to a waiver of defects therein." See also: Mitchell v. Carlson, 132 Mont. 1, 8, 313 P.2d 717.

"Knowledge in a general way of a latent defect of which the owner had no means of knowing its extent and latent dangers will not amount to a waiver of the right of action for a breach of the contract, in the absence of other facts tending to disclose an intent to waive the right of action." Steltz v. Armory Co., 15 Ida. 551, 99 P. 98, 100, 20 L.R.A., N.S., 872.

 : In this instance the floor did not contain latent defects that would later appear to cause the school district unsuspected difficulties; objections were made to the condition of the floor at the final inspection and these objections were incorporated in the punch list. The items objected to were corrected to the satisfaction of the architects and they issued their final certificate as provided for in the agreement between contractor and owner:

"* * * over his own signature, stating that the work provided for in this contract has (had) been completed and is (was) accepted by him under the terms and conditions thereof * * *."

The school district subsequently ratified the architects' acceptance of the building by issuing the final payment. There were no conditions contained in the certificate of acceptance nor in the school district's final payment, even though architect Loners acknowledged they could have used other forms containing conditions. The payment was final and the acceptance was final. There were no objections, reservations, or conditions inserted in the final acceptance and the school district must be deemed to have accepted the floor as it existed at that time. Had a protest been included with the final payment as in Leonard v. Home Builders, 174 Cal. 65, 161 P. 1151, L.R.A.1917E, 645, the result might have been different.

This Court said in Swords v. Occident Elevator Co., 72 Mont. 189, 195, 232 P. 189, 193:

"A waiver is the intentional relinquishment of a known right [citing cases] and implies necessarily that the right was in existence at the time it is claimed to have been waived. [Citing cases]"

The architects should have refused to accept the floor as corrected by the contractor and the school district could then have refused to make final payment without including some reservation in it. They elected to rely on the warranty for latent defects and to relinquish any rights they might have to force correction of the defects in the floor.

Whether a party has waived a condition in a contract is a mixed question of law and fact, but when the facts are found or admitted it is for the court to say—as a matter of law—whether the waiver exists. Osborne v. Supreme Lodge Etc. Ins. Dept., 69 Mont. 361, 222 P. 456.

This action was tried before the trial court without a jury. There being no jury determination of the facts this Court reviews the findings of the trial court. The facts establishing the waiver are all admitted or proven without a doubt. The floor was defective at the date of acceptance; and acceptance and payment were made without equivocation. The school district had a right to withhold payment or issue it with qualification, but it chose to rely upon the warranty for latent defects and as a matter of law it waived its rights to later require the contractor to rebuild the accepted floor.

It cannot be said that this contract was not performed. The building stands and has been occupied and used for the purposes for which it was intended for over seven years. In giving legal advice to the school district the architects acted beyond the limits of their profession and the school district in relying on their advice is bound by the decision made—to make final payment to the contractor.

Although the defendants rely also upon the statute of limitations as a defense in this matter, we find no necessity to discuss

this issue in view of our disposal of the action on the main issue before this Court.

The judgment is reversed and the trial court is directed to dismiss the action.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, HASWELL, and BONNER, concur.