**UNITED PACIFIC INSURANCE COMPANY, Plaintiff-Appellee,**

v.

**COUNTY OF FLATHEAD et al., Defendants-Appellants.**

No. 72–1702.

United States Court of Appeals, Ninth Circuit.

May 24, 1974.

James A. Cumming (argued), of Measure, Cumming & Salansky, Columbia Falls, Mont., H. James Oleson, County Atty., Kalispell, Mont., for defendants-appellants.

Albert O. Prince (argued), of Lycette, Diamond & Sylvester, Seattle, Wash., Eugene Phillips (argued), of Murphy, Robinson, Heckathorn & Phillips, Kalispell, Mont., William Boone of Boone, Karlberg & Haddon, Missoula, Mont., for plaintiff-appellee.

Before TRASK, GOODWIN and SNEED, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment in favor of United Pacific Insurance Co. (United Pacific) and against the Special Improvement District No. 3, Bigfork, Montana (Improvement District), pursuant to an order for a directed verdict at the conclusion of all of the evidence in a jury trial. The Improvement District also appeals from the judgment at the conclusion of the evidence dismissing its counterclaim against United Pacific. Jurisdiction of the District Court was based upon diversity of citizenship, 28 U.S.C. § 1332, and the appeal here is pursuant to 28 U.S.C. § 1291.

In July 1964, Kalispell Plumbing and Heating, Inc. (Contractor) entered into a contract with the Improvement District for construction of a sewerage collection and treatment system. The total contract price for the project was $341,452, plus compensation for additional work. Provisions of the contract pertinent to this suit provided that (1) the Architect/Engineer was to be "the final judge of the quality and suitability of the work, materials, processes of manufacture and methods of construction . . . " (¶ 20) ; (2) in case of a dispute between the parties, the decision of the Architect/Engineer was to be deemed final and conclusive of the contractor's right to payment (¶ 35) ; and (3) the contractor guaranteed repair or liability for any defects appearing within one year after final acceptence of the work (¶ 40).

In accordance with Montana law, a bond for the project was issued by United Pacific as surety on behalf of Contractor. The plans and specifications for the sewerage project were prepared by J. G. Link & Co. (Engineer) which also acted as the owner's supervising engineer and representative throughout the construction.

During the course of construction, the contractor encountered financial difficulties. In order to avoid a default, United Pacific advanced financial assistance. To the extent of this advance, United Pacific claims a subrogation right to the proceeds of the contract; in addition, United Pacific asserts right to the proceeds on the basis of an assignment executed by the Contractor to it in 1965.

Work on the sewerage project was completed according to the certificate of the Engineer on March 30, 1966. At that time Contractor and Surety had received a total payment of $284,164.14 on the contract, leaving a balance due of $64,318.42 for which the action was brought.

On March 30, 1966, Improvement District's engineer executed a certificate

and "final pay estimate" certifying that all work had been completed in conformity with the contract, and ordering final payment (including retained percentages). This final payment was never made by the Improvement District, however. Instead, in October 1966, a second final inspection occurred and a deficiency list was produced. On March 22, 1967, representatives of the Improvement District, Contractor and United Pacific met and executed the agreement designated as "Exhibit 11" in this suit. In that agreement Contractor and Surety agreed to correct three specified construction deficiencies, and the Improvement District agreed to take formal steps to accept the work. The agreement was executed with the express understanding that it would not compromise the parties' earlier contentions. In accordance with the March 22, agreement, the contractor made the necessary repairs. The Improvement District, however, ordered a detailed engineering inspection of the entire project, and this was subsequently conducted by a firm retained by the United States Government. As a result of this investigation (which included a closed circuit television inspection of the sewerage lines) the Improvement District abandoned all further action toward acceptance of the project and final payment. This move ultimately precipitated the present suit brought by the appellee, United Pacific.

■ Appellant contends that the court was in error in its trial ruling that the engineer's final certificate of March 30, 1966, was binding upon the Improvement District. Paragraph 35 of the contract provides as follows:

"The Architect/Engineer shall give all orders and directions contemplated under this contract and specifications relative to the execution of the work. The Architect/Engineer shall determine the amount, quality, acceptability, and fitness of the several kinds of work and materials which are to be paid for under this contract and shall decide all questions which may arise in relation to said work and the construction thereof. The Architect/Engineer's estimates and decisions shall be final and conclusive, except as herein otherwise expressly provided. In case any question shall arise between the parties hereto relative to said contract or specifications, the determination or decision of the Architect/Engineer shall be a condition precedent to the right of the Contractor to receive any money or payment for work under this contract affected in any manner or to any extend [sic] by such question . . . . ."

Brief of Appellee at 2.

The interpretation of this standard contract provision appears to be in accordance with the law of Montana. Polley's Lumber Co. v. United States, 115 F.2d 751 (9th Cir. 1940); Clifton, Applegate & Toole v. Big Lake Drainage District No. 1, 82 Mont. 312, 267 P. 207 (1928).

In *Clifton*, the Supreme Court of Montana declared:

"The law appears to be definitely settled that: 'The decision, estimate or certificate of an architect, engineer, or superintendent, in approving or disapproving the work as a performance of a contract, or in passing on questions relating thereto, is, in the absence of fraud, bad faith, or mistake, conclusive and binding on the parties where the contract, either in express terms provides that it shall be final and conclusive, or in plain language shows that it was the intention of the parties that the person to whom the question is submitted should be the arbiter thereof.'" 262 P. at 211.

Appellant's argument that this interpretation of the contract usurps the judicial function, and appellant's reliance upon Wortman v. Montana Cent. R.R., 22 Mont. 266, 56 P. 316 (1899), is mistakenly out-of-date. In *Polley's Lumber Co., supra*, the Ninth Circuit reviewed Montana law on precisely the point involved here, and noted that the *Wortman* rule was considered an "anomaly" by subsequent Montana courts recogniz-

ing the value of private arbitration agreements. 115 F.2d at 754. Under Montana law we consider the Engineer's certificate of· completion binding upon the parties. There was no proof of any fraud or mistake on the part of the Engineer.

■ The Improvement District relies upon Paragraph 40 of the contract to authorize and excuse its failure to pay based upon subsequently discovered defects of performance.[1] Paragraph 40 is a general guaranty of materials and workmanship which survives the final completion. According to its terms it continues the responsibility for such defects "which shall appear within a period of one year from date of final acceptance of the work." It does not open the final acceptance of the Engineer to attack. Here the Improvement District did call certain deficiencies to the attention of the Contractor in October 1966. Later, on March 22, 1967, (just a few days before the expiration of the guaranty period dating from the final certificate on March 30, 1966) the parties entered into a formal agreement (Exhibit 11) pursuant to the guaranty provision of paragraph 40. In it United Pacific agreed to correct three items which were specifically described; the Improvement District agreed that upon signing it would take the necessary steps to "formally accept the contract." The Contractor performed the required repairs, but the Improvement District then ob-

tained assistance in the form of the investigative team which rendered its report in September 1967. Objection to the admissibility of this report was sustained upon the ground that the March 22, 1967, agreement constituted a novation between the parties. Whether the ruling was justified because the March 22 agreement constituted a novation, or because it was outside the guaranty period, the Improvement District was obligated to perform its part of the bargain by payment of the balance due under its contract.

■ The counterclaim filed by the Improvement District alleged that the sewerage system was so negligently constructed that large sections were unusable unless extensive repairs were made. Damages were claimed.[2]

The case in support of the counterclaim was meagre. In November or December of 1965, the Engineer made a final inspection. A punch list of uncompleted items was submitted to the Contractor. Appellee asserts in its brief that these deficiencies were corrected. The appellant does not dispute the statement. The Engineer's final certificate was made March 30, 1966. The court correctly decided that in the absence of fraud, bad faith or mistake the final certificate of completion by the Engineer was conclusive. Clifton, Applegate & Toole v. Big Lake Drainage District, *supra*. In May 1966, a second request for repairs was made, presumably under

---

1. "*40. General Guaranty*
   Neither the final certificate of payment nor any provision of the Contract Documents nor partial or entire occupancy of the premises by the Owner shall constitute an acceptance of work not done in accordance with ·the Contract Documents or relieve the Contractor of liability ʼin respect to any express warranties or responsibility for faulty materials or workmanship. The Contractor shall remedy any defects in the work and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final acceptance of the work unless a longer period is specified. The Owner will give notice of ob-

   served defects with reasonable promptness."
   Brief of Appellee at 2.

2. This counterclaim was filed on March 11, ˙1969. On May 17, 1971, a new answer and counterclaim was submitted for filing. It was presented 2 days later at the beginning of the trial. Upon objection the court asked counsel to justify the delay. The answer was: "The excuse, Sir, that up until the last month or so we have not had a chance to draw all the matters together." The court denied leave to file the amended pleading. We do not disagree. A cross-complaint filed against the Engineer, Link, was dismissed prior to trial.

the one-year guaranty of paragraph 40, and these deficiencies were corrected. Last, an additional list of repairs was submitted in October 1966 and all but three were completed. As to these three, the Contractor and Surety entered into the written agreement dated March 22, 1967, *supra*. The repairs were completed. Other evidence was offered by the Improvement District of defects of performance by the Contractor but the offers related to defects which appeared or were discovered more than a year after final acceptance. These were excluded by the court upon that ground (paragraph 40), and also upon the theory that the March 22, 1967, agreement constituted a novation.[3] The novation or new contract between the parties was that the Improvement District would accept the contract and the Contractor would make the repairs. In Grass Range High School Dist. v. Wallace Diteman, Inc., 155 Mont. 10, 465 P.2d 814, 816 (1970), the court said:

"Clearly, the requirement to correct defects appearing within one year of the final payment cannot be extended to cover defects existing at the date of acceptance, or defects that appeared later than one year after final payment."

Here there has been no final payment. But there has been an Engineer's final certificate of completion and a later agreement to accept the contract upon correction of three items. These corrections were made. The court's order dismissing the counterclaim was proper.

The judgment is affirmed.

---

3. The Improvement District did not offer to prove in the District Court nor has it argued here that any of the alleged defects were latent defects not discoverable by reasonable inspection at the time the Engineer signed his certificate of final acceptance. Had the District made such an offer, a refusal to admit evidence of such defects might present a different question. *See* City of Midland v. Waller, 430 S.W.2d 473 (Tex. 1968), which held that an architect's final certificate was binding on all parties as to the actual physical, final completion of the work, but insofar as defects were unknown and not discoverable through the exercise of ordinary care, the relevant statute of limitations, rather than the one-year repair provision, applied. Since the Improvement District here has not presented this argument as a basis for admitting the September 1967 investigatory report, we will assume that the report did not reveal the kind of defect which may have been admissible under authorities such as City of Midland. *Compare* Independent Consol. School Dist. v. Carlstrom, 277 Minn. 117, 151 N.W.2d 784 (1967).